## James H. Goodman v. E. H. McGehee.

Confederate treasury notes were promises of the Confederate States to pay a certain number of dollars therein mentioned to bearer, within a specified time, after a treaty of peace between the Confederate States and the United States, and as such they were intended to aid the rebellion, were in violation of the constitution of the United States, and were illegal and void.

If any part of the entire consideration for a promise, or any part of an entire

promise, be illegal, whether by statute or at common law, the whole contract is void, and every executory contract, the consideration of which is illegal on either side, is void.

Parol evidence to show that a contract is founded on an illegal consideration is admissible.

If a contract be illegal, it may be avoided by a proper plea, even though it be a specialty, and the illegality be not apparent on the face of the instrument.

Confederate money, whether it forms the consideration on the part of the obligor or obligee, is illegal.

[LINDSAY, J., concurred, but said: "I cannot agree that a contract, the consideration or performance of which is illegal, is void."]

ERROR from Bastrop. The case was tried before Hon. JOHN IRELAND, one of the district judges.

Goodman sued McGehee on a note, dated 18th of May, 1863, due at one day after date, for $700, with interest at ten per centum per annum. The defendant pleaded that the note was given for treasury notes of the Confederate States of America, and that they were valueless; that he afterwards tendered the full amount of said notes "in the new issue," which the defendant refused to receive. The court charged the jury in accordance with the scaling ordinance. (Paschal's Dig., p. 950, sec. 7.)

The jury found a verdict for $615, of which the plaintiff remitted $115. The defendant prosecuted error. It was proved that the note was given for Confederate treasury notes, and their value at the date of the note was proved to be about fifty cents in the dollar.

*A. D. McGinnis,* for plaintiff in error.—The plaintiff in error insists on a reversal of the judgment of the court below and a dismissal of the case on the principle settled by this court in the cases of Smith v. Smith, 30 Tex., 754, and Linder v. Barbee, [not published,] decided by this court at the last Austin term.

In this case, as in the case of Linder v. Barbee, the consideration of the note sued on was treasury notes of the late so-called Confederate States, as shown by the sworn

plea of the plaintiff in error, and the testimony of the witnesses for both parties, as well as the charge to the jury of the court below, who also authorized the jury to estimate the difference between specie and United States currency.

It is insisted, also, that if this court could allow the enforcement of a contract for treasury notes of the late Confederate States, issued for the purpose of aiding the rebellion against the general government, yet the proof in this case shows the plaintiff in error often tendered the full payment of the note sued on, but the same was not accepted.

No brief for the defendant in error has been furnished to the *Reporter.*

MORRILL, C. J.—Defendant's answer alleges that the consideration of the note was Confederate money. The testimony fully establishes the facts set forth in defendant's answer. The judge charged the jury that they should find the value of Confederate money at the maturity of the note and render verdict thereon.

The several exceptions to the pleadings and the orders and rulings in the district court call upon us to decide—

1. Whether the consideration, as alleged in the answer and admitted to be proved, is illegal,

2. Whether a note given for an illegal consideration is void,

3. Whether the facts set forth in the answer, to show the note void, can be pleaded,

As to the first question: Confederate money was and is an obligation or a promise of the Confederate States to pay a certain number of dollars, therein mentioned, to bearer in a specified time after a treaty of peace between the Confederate States and the United States. It did not purport to be of any value unless the rebellion should prove to be a success. The necessary consequence whereof

was, that every one who was the holder and owner of these notes was or would be interested in the success of the rebellion in ratio proportional to the amount which he might own. If we could conceive of any citizen of the United States to be indifferent as to the success of the two great powers, the possession and ownership of these promises would have a tendency to create a bias in favor of the Confederate government. But when we take into consideration that these Confederate promissory notes were the only money, or substitute for money, that the Confederate States had to carry on the war, without which the war would have been of short duration, and the rebellion would have terminated in a comparatively brief space of time, and that its value depended upon its circulation, the inference necessarily follows that whoever aided in its circulation and treated it as of value, in the same degree aided the rebellion and injured the United States.

With this view of Confederate money, and taking into consideration that the supremacy of the constitution of the United States and the laws passed in pursuance thereof are expressly acknowledged in the original law of this state, we cannot regard a contract for buying and selling Confederate money as legal. If the war of the Confederate States against the United States was illegal, it needs no great intellect to discover that every act of all who assisted in this war was *pro tanto* illegal.

The second question is, whether a note given for an illegal consideration is void?

In 1 Parsons on Contracts, 380, it is stated: "In general, if any part of the entire consideration for a promise, or any part of an entire promise be illegal, whether by statute or at common law, the whole contract is void."

In 1 Story on Contracts, § 485, after stating, "contracts are sometimes said to be illegal, either because the consideration of the promise is illegal or because the promise itself is illegal," he proceeds: "Every executory contract,

the consideration of which is illegal on either side, is void."

We do not deem it necessary to multiply authorities, but will conclude our remarks on this point by repeating the language of Chief Justice HEMPHILL, in James v. Fulcrod, 5 Tex., 520: "That contracts against public policy are void, and will not be carried into effect by courts of justice, are principles of law too well established to require the support of authorities."

The other question is the last proposed, Whether a party is permitted to plead this illegality? This is, in fact, the main, if not the only, question in controversy in the case. With great plausibility authorities are arrayed, going to show that parol evidence cannot be admitted to vary or explain or contradict a written contract, unless fraud, &c., are alleged. That the contract is free from all ambiguity, and that there is no pretense of imposition, &c.; and, however onerous it may seem, yet courts have no power to grant relief where there is no concealment or violation of the rules and laws of equity. It may be true that courts will never interpose their power for the benefit of a party, where he has made a contract, with a full knowledge of all the facts and without restraint, however onerous it may be. At the same time courts will never give any aid in enforcing an illegal contract. The inquiry is not whether parol evidence can be admitted to explain or alter a written contract, but whether the contract really was illegal; and this inquiry is not for the relief or benefit of a party, but because courts will never be the tools or agents or instruments for doing what is contrary to law.

The interest of either or both of the parties is not considered where both have attempted to do an illegal act. "No polluted hand shall touch the pure fountain of justice." Whatever the supposed contract may be, whether the illegality is apparent or concealed, as soon as it may appear evident to a court that it is illegal, it is no contract, because

it is illegal.   And a contract is no less illegal because it is
sugar-coated.   Courts will divest all illegal acts of their
verbiage, and, having discovered their nude deformity,
drive them out of the temples of justice.   "*Procul, O pro-
cul, este profani.*"

In Cowen & Hill's notes to Phillips on Evidence, Part II,
page 612, note 304, we find:

"The rule confining the operation of parol evidence
within the limits of strict exposition or interpretation
assumes that the instrument has a legal existence and is
valid.   Testimony to show it to be void is always perti-
nent, no matter who are the parties or in what court the
question arises."

In the case of Parker v. Decker, 10 Mass., 273, the court
said: "By the common law deeds of conveyance or other
deeds, made contrary to the provisions of a general statute
or for an unlawful consideration, or to carry into effect a
contract unlawful in itself, or in consequence of any pro-
hibitory statute, are void *ab initio*, and may be avoided by
plea, or on the general issue of *non est factum;* the illegality
may be given in evidence to show that the writing executed
by the defendant is not a deed by any lawful construction
or effect."

In Paxton v. Popham, 9 East., 207, Lord ELLENBOROUGH,
in delivering the opinion of the court, said: "According to
the doctrine of the chief justice in Collins v. Blantem, unless
the obligor were permitted to contravene the condition of
the bond by plea, showing the truth of the transaction, a
bond would be made a cover for every species of wicked-
ness and illegality.   It would only be necessary to have a
bond with a condition stating the consideration of it as
widely from the truth as possible.

"Since the case of Pole v. Harrobin, in 1782, it has been
generally understood that an obligor is not tied up from
pleading any matter which shows that the bond was given

xxxi—17

upon an illegal consideration, whether consistent or not with the condition of the bond."

In 1 Story on Contracts, § 541, we find: "If the consideration be illegal, the contract may be avoided by a proper plea, even though it be a specialty and the illegality be not apparent on the face of the instrument."

In Schmidt v. Barker, 17 La., 264, the court said: "This court has often held that it will not lend its aid to settle disputes relative to contracts reprobated by law. It will notice their illegality *ex officio*, and allow it, without any plea, at any stage of the proceedings."

In 1 Bouv., 222, it is said, "A contract, according to Pothier, is a convention or agreement, by which two or more persons consent to form between themselves some lawful engagement. All obligations derive their force from the law, and therefore every obligation supposes a superior law, which binds us to the performance."

We have made these numerous quotations from elementary writers and reports of the highest authority, and they all unite in sustaining the positions we have assumed, that a contract, the consideration or performance of which is illegal, is void.

2. That Confederate money, whether it forms the consideration on the part of the obligor or the obligee of the contract, is illegal.

3. That this illegality can be pleaded.

And as this case falls under the condemnation of these principles, it is ordered that the judgment be reversed, and the cause

DISMISSED.


LINDSAY, J.—In this case, concurring as I do in the general conclusion of the opinion delivered by the chief justice, which directs both a reversal of the judgment and dismissal of the cause from the dockets of the courts, because of the illegality of the contract, yet I cannot give my official sanc-

tion to some of the deductions made from the authorities quoted and relied upon.   I fully concur in the correctness and just reasoning of those authorities.   But in my view they do not warrant the inferences drawn from them in the opinion, and which would go to the world as the unanimous opinion of this court if this dissent was not made manifest.   While I fully agree that every contract made in violation of law, whether by parol or in writing, will be, and ought to be, universally declared by the courts to be a nullity; in other words, that all illegal contracts are and should be declared void; and, though they may be reduced to writing, that a plea or defense of illegality may be properly set up and established by parol proof, I am not prepared nor willing to go so far as to unite in the declaration, as a legal maxim, "that a contract, the consideration or performance of which is illegal, is void."

I cannot give my assent to such a proposition.   A very legal contract might be very illegally performed to the satisfaction of the contracting parties, and yet there might be no vice in the contract.   Performance is no inherent part of the contract for the exposition of courts of justice. If the subject-matter about which the contract is made in writing is legal, and there be no stipulation in it for performance in an illegal way, parties will not be heard to allege such illegal understanding.   It is the subject-matter about which contracts are made that constitutes their legality or illegality.   And it is because of the turpitude or unlawfulness of the subject-matter that courts refuse to entertain jurisdiction of them, and always dismiss them from consideration.   Many a contract, perfectly legal in itself, has been illegally performed, in the progress of the late war, when paid off in Confederate money.   Where so accepted by the payee voluntarily it was at least an accord and satisfaction between the parties, though an illegal performance.   Thus much I feel myself bound to say in justice to my own legal convictions.