## A. O. WATSON ET AL. V. DE WITT COUNTY.

### Decided June 2, 1898.

**1. Building Contract with County—Abandonment.**

The commissioners court of a county is justified in treating a contract for the erection of a courthouse as abandoned by the contractor where more than six months has elapsed since the date fixed by the contract for its completion, and work has ceased thereon (both the contractor and the subcontractor having become insolvent), and the superintendent of the contractor has reported to the court that the building is open and subject to damage from water and urged the necessity of its completion.

**2. Same—Charge of Court as to Abandonment.**

An instruction that if the jury believe a building contractor did not comply with his contract, and that it was broken by his default, not excused in view of the other portions of the charge, to find for the plaintiff in an action upon the contractor's bond, is not subject to the criticism that the jury may infer therefrom that any character of default by the contractor would authorize the plaintiff to treat the contract as forfeited, where other portions of the charge place plaintiff's right to treat the contract as abandoned upon the want of performance by the contractor, and direct the jury that if the contractor did not abandon the contract and if plaintiff wrongfully took possession of the building and prevented performance by the contractor, to find for the defendants.

**3. Same—Recitals in Order of Court as Evidence.**

The recitals in the orders of the county commissioners court declaring a default in the performance of a contract for the construction of a courthouse are not evidence of the facts of delay and abandonment on the part of the contractor.

**4. Same—Charge of Court.**

The word "abandonment" as used in an instruction defining the respective rights the owner of the right of rescinding upon subsequent abandonment of the work by a contractor, needs no definition.

**5. Same—Extension of Time—Abandonment.**

The extension of time for the completion of a building contract does not deprive the owner of the right of rescinding upon subsequent abandonment of the work by the contractor.

**6. Same—Evidence.**

A report by the superintendent for the construction of a courthouse to the

commissioners court about the condition of the building is admissible against the contractor, if pertinent to the question of delay and the necessity of assumption of the work by the county, where the report was shown to the contractor and it was demanded of him that he resume work at once, and he did not dispute the correctness of the report, but asked for further time.

### 7. Same—No Recovery for Plans and Specifications, When.

A building contractor who makes default in the performance of the contract is not entitled to recover anything for plans and specifications where the method for the submission of bids contemplated that each contractor should bid upon plans and specifications furnished by himself.

### 8. Same—Evidence of Delay—Declarations.

A witness testifying upon an issue of delay in completing a building may, for the purpose of fixing the time, state declarations made by third persons in regard to it.

### 9. Same—Measure of Damages for Noncompletion.

The difference between the value of a building if completed according to the contract and the contract price, together with the difference between the payments made under the contract and fees paid to an architect employed after the abandonment of the contract to advise the owner about the completion of the building and to superintend the same, constitute the measure of damages for the breach of a building contract by failing to complete the same.

### 10. Jurors—Citizens in Suit Against the County.

A citizen of a county is not disqualified to sit as a juror in a case in which it is a party, under article 3141 of the Revised Statutes, forbidding generally any person to sit as a juror in a case in which he may be interested directly or indirectly, since article 791 expressly provides that the inhabitants of a county suing or being sued may be jurors, if otherwise competent.

### 11. Minutes of Court—Signing and Attestation.

The provision of article 1527, Revised Statutes of 1879, providing that the minutes of the commissioners court shall be attested by the clerk, is directory only, and an order entered therein is not invalid for want of such attestation.

### 12. County Bonds—Validity—Levy of Tax.

It is not necessary that the statutory provision for the issuance of county bonds to pay for the erection of a courthouse and the levy of the tax for the payment of the bonds should be simultaneous with the creation of the debt for the erection of the building. Following Mitchell County v. Bank, 91 Texas, 370.

### 13. Joinder of Actions.

A claim for stipulated damages for delay in completing a building contract is properly joined with a claim for damages for the breach of the contract to build, in an action upon the contractor's bond.

APPEAL from De Witt. Tried below before Hon. JAMES C. WILSON.

*John H. Bailey, J. R. Hamilton, C. F. Carswell, R. A. Pleasants,* and *John Dowell,* for appellants.

*Proctors* and *S. C. Lackey,* for appellee.

GARRETT, CHIEF JUSTICE.—De Witt County brought this suit in the District Court of that county against A. O. Watson as principal, and D. M. O'Connor and J. P. Schneider as sureties, upon the bond of Watson given to secure the performance by Watson of a contract entered into between him and the county of De Witt for the erection of a courthouse for said county. The plaintiff alleged that Watson breached the contract

by the abandonment thereof, leaving the building unfinished, so that the county was obliged to take possession and complete the same. The damages were laid at the reasonable cost of completion of the building in accordance with the contract over and above the contract price, including attorneys' fees and the fees of an architect, and in addition thereto stipulated damages for delay beyond the time fixed for the completion of the building were sought to be recovered in accordance with a provision therefor contained in the contract. Defendants filed certain special exceptions to the petition, which were all overruled except one addressed to the claim for attorneys' fees, and one to the recovery of stipulated damages for delay after the county took charge of the building, which were both sustained by the court. The remaining exceptions were addressed mainly to the invalidity of the contract by reason of the alleged failure of the Commissioners Court to comply with the law in the creation of the debt for the erection of the house. This defense was set up also at length in a special answer. Defendants also specially denied that the said Watson had ever abandoned the contract, and pleaded in bar of the right of the county to treat the contract as abandoned and to take charge of and complete the building. It was also pleaded that the contract for the completion of the building was invalid because the debt therefor was created without at the same time making provision for the payment thereof.

A trial by jury resulted in a verdict and judgment in favor of the plaintiff.

The facts developed at the trial, so far as material to the questions presented on this appeal, were as follows:

1. On May 15, 1894, at a regular term thereof, the Commissioners Court of De Witt County, all the members being present, and the county then being without one, decided to build a courthouse, not to exceed the cost of $70,000, and for that purpose made an order directing the issuance of seventy bonds of the county for $1000 each to bear date at the date of issue. A proper tax was levied by the order to meet the principal and interest of the bonds, and no excess of indebtedness over the authority of the county to incur was created by their issuance. On the same day the court directed that plans for a courthouse not to exceed the cost of $70,000, with accompanying bids for the building thereof, would be received up to June 11, 1894, and ordered the publication of a notice to contractors to the same effect in three certain daily newspapers published in this State. Under the mode of competition adopted each contractor was required to submit bids in accordance with plans furnished by himself.

2. The defendant Watson, who was an architect by profession, and not a contractor, on June 11, 1894, submitted to the Commissioners Court his plans for a courthouse and a bid for the construction thereof in accordance with the plans and specifications. His expressed purpose was to build the house by a subcontract. The court was then in special session considering the several plans and bids submitted to them until June 16th,

when the contract for the erection of the courthouse, according to the plans and specifications filed with his bid, was awarded to Watson, conditioned upon his presentation of a bond in the sum of $50,000, payable to the county judge of De Witt County. The court then adjourned, as shown by the minutes, until "Monday, June 18, 1894, at 9 o'clock a. m., as a board of equalization."

On June 22, 1894, the court, then being in session and a full board being present, entered into a written contract with the defendant Watson to build the courthouse. It was signed by Watson, styled as party of the first part, and the county of De Witt acting by the members of the Commissioners Court as party of the second part, subject to the presentation of the bond within twenty days to be approved by the court. At a called session of the court held July 7, 1894, a full board being present, the defendant Watson presented to the court his bond as required by the court at a previous session, and the same was approved by the court and the contract was finally affirmed and concluded, all of which was embraced in an order of the court then entered upon the minutes thereof.

3. The contract entered into between Watson and the county bound Watson, "his heirs, executors, and assigns," for the consideration named therein by June 22, 1895, to "well and sufficiently erect, build, finish, and complete, and deliver for use in a true and thoroughly workmanlike manner to said party of the second part, a courthouse building on the courthouse square, in the city of Cuero, De Witt County, according and agreeable to the plans, drawings, and specifications for the same prepared by A. O. Watson, architect, of Austin, Texas, copies of which are on file in the county clerk's office and are hereby made a part of this contract."
*   *   *   "Said courthouse building to be built in strict accordance with plans and specifications, and under direction and personal supervision of the county judge and the Commissioners Court of DeWitt County, or a superintendent to be designated by said party of the second part. If the latter, he is to be paid by the party of the second part, and the party of the first part will, at his own proper cost and expense, find and provide such good, proper, sufficient material and labor of all kinds whatsoever as shall be proper and sufficient for building and finishing said courthouse building."

In full payment for the erection and completion of said courthouse building the county agreed to deliver to the said Watson, his heirs, executors, and his administrators or assigns, seventy courthouse bonds of the denomination of $1000 each, to run and bear interest as set out in the contract, to be issued and delivered as the work progressed, as follows: (1) Twenty bonds when the foundation of the building was completed ready for placing the first floor beams; (2) twenty bonds when the first story was finished and ready for the placing of the second floor beams; (3) twenty bonds when the third story wall was completed and ready for the placing of the ceiling beams; and (4) ten bonds, the balance in full of the contract, upon the acceptance of the building by the county.

It was further agreed that for each day after the time specified for the

completion of the building that it should remain unfinished, Watson should pay the county $5 as liquidated damages, provided that there should be deducted from such time all delays caused by weather, etc., of which notice should be given by the contractor. It was also agreed that time should be deducted for delay in delivering the bonds of the county as stipulated, but that such delay should not be cause for stopping work. The contract also contained the following provision: "It is further agreed and understood that the party of the first part will keep upon the grounds during the erection of any part of said building, as superintendent of said building, Mr. Paul Helwig, of Austin, Texas, or in the event of his being removed for any cause, said party of the first part will appoint a thoroughly competent superintendent to fill his place." The specifications which were made a part of the contract contained the following clause: "Special Furniture.—All offices, county and district clerk's record rooms, and county and district court rooms to be furnished complete, including all seats, desks, tables, roller shelves, and document files, judge's desks, clerk's desks, witness stand, and jury seats. All furniture to be made of natural oak for seats, tables, and desks; document files and roller shelves to be of best steel manufacture."

4. The bond put in suit was duly executed in conformity with the order of the Commissioners Court by A. O. Watson as principal and D. M. O'Connor and J. P. Schneider as sureties, dated June 22, 1894, and payable to Ed Koenig, county judge of De Witt County, and to his successors in office for the use and benefit of De Witt County, conditioned that whereas said A. O. Watson had entered into a contract in writing "to build, erect, and complete a certain courthouse building for said DeWitt County according to the plans, details, and specifications of same as mentioned and referred to in said written contract." * * * "If the said A. O. Watson shall faithfully perform all the conditions of the said contract, and shall promptly and faithfully comply with, perform, and carry out all of his promises, agreements, covenants, undertakings, and obligations in the manner and within the time stated in said contract, then this obligation shall be null and void, otherwise to remain in full force and effect."

5. Watson sublet the contract for the building of the courthouse to M. Clarke, of Galveston, who afterwards began and prosecuted the work until some time in August, 1895, when he failed before the building had been two-thirds finished. In order to protect the sureties on his bond to Watson, Clarke transferred his contract with Watson to them, and they undertook to carry it out through one Elder as trustee, who took charge September 23, 1895, with the consent of Watson's sureties. The Commissioners Court on October 3, 1895, after Elder took charge of the building, directed the issuance and delivery of the third installment of twenty bonds, and fixed the date for the delivery of the last installment, as follows:

"Whereas, heretofore, to wit, on the 16th day of May, 1895, the Commissioners Court of De Witt County did make and enter its order fixing

the date of the issuance of the second, third, and fourth installments of bonds to be issued and delivered to A. O. Watson, contractor for the building of the courthouse of De Witt County;

"And whereas, on said order the second installment of bonds were issued and delivered to said contractor;

"And whereas, by reason of delays in the further prosecution of the work on said courthouse the third installment of bonds were not earned on the first day of June, 1895, the date fixed in said order for the issuance of said bonds, and the contractor was not, under the terms of his contract with the county, entitled to receive said bonds;

"And whereas, on the first day of October, 1895, the work had so far progressed as to entitle said contractor to have and receive said third installment of bonds, say twenty bonds of one thousand dollars each, now it is ordered by the court that the date of said third installment of bonds be, and the same is now fixed as October 1, 1895, and said order hereinbefore referred to, in so far as it fixes a different date for the issuance of said third installment of bonds, be, and the same is hereby rescinded, and the said bonds are now ordered to be issued dated October 1, 1895, and to be delivered to said contractor.

"And said order of date May 16, 1895, is further so modified as to fix the date of the issuance of the fourth installment of bonds, say ten bonds of one thousand dollars each, on the 15th day of February, 1895; and the said former order of this court, of date May 16, 1895, in so far as it provided a different date for the issuance of said last installment of bonds, be and the same is hereby rescinded. It being the purpose of this order only to change the dates for the issuance of the third and fourth installments of bonds made by this court on the 16th day of May, 1895, and not to change in any manner, invalidate, or interfere with the tax levied for courthouse purposes by an order of this court on the 15th day of May, 1894, in regular term, and that said tax levy shall remain in full force and effect."

6. Work again ceased on the building December 12, 1895. Watson endeavored to get the sureties of Clarke to resume work or give some assurance that they would do so, but they delayed the matter, and finally, on December 31, 1895, declined to do anything further. Watson was insolvent and unable to complete the building. On December 26, 1895, Helwig, the superintendent put in charge of the building by Watson, made a report in writing to the Commissioners Court, in which he stated that the building had reached a stage in which immediate progress with work was absolutely necessary for the safety of the building, stating reasons therefor. At the time this report was made, Helwig was still in the employment of Watson as superintendent of the building, in accordance with the provision in the contract to that effect, and was up to and including December 30, 1895, when he resigned to take effect January 1, 1896. The Commissioners Court convened on December 26, 1895, and on December 27th, the court being in session, Watson and Helwig were present when the report of the latter was shown to Watson, and it was de-

manded of him that he resume work at once. He asked for time to see the Galveston parties and was told that he could not have it. He, however, went to Galveston and failed to accomplish anything. On December 30th the court entered an order declaring default in the performance of the contract on the part of Watson and the necessity for the county to resume possession of the building, and directed the sheriff to take possession thereof in the name of the county, which was done. Before the Galveston parties, the sureties of Clarke and others who had been assisting them, heard of this action of the county, they, on December 31st, telegraphed Watson that they would do nothing further. At the time the county took possession of the building two of the employes of Elder, the trustee in charge of the work, were present in charge of the building and property and occupying the business office in the courthouse square. These employes were the general foreman of the work and the foreman of the carpenter's work. There was also on hand at the time some building material, as well as a part of the furniture mentioned in the specifications. So far as completed, the work upon the building had been done in compliance with the plans and specifications and there is no complaint on that account. But there had been numerous delays in the prosecution of the work. Notice was given of only thirty days delay under the contract for stipulated damages; yet on December 30th, when the court took charge of the building, it lacked a great deal of completion. It was not inclosed except that the roof sheeting was on; there was no sheeting on the tower, and no openings in the building were closed.

Our conclusion is that the contract had been abandoned by Watson and that the Commissioners Court was justified in so treating it, and acted as prudent men in taking possession of the building.

7. After it took possession of the building the Commissioners Court employed an architect, Eugene T. Heiner, to examine the same, report as to its condition, and advise as to the best manner of finishing the work. Heiner made an examination, reported as to condition, and estimated the cost of the material and labor in the work, so far as it had progressed, at about $54,000. He advised immediate prosecution of the work for the safety of the building, and that it be done by contract. The court, after receiving several bids for the completion of the work, let it to a firm of contractors at $25,960, exclusive of furniture and cesspool and connections. This was a reasonable sum, and the action of the court in finishing the building by contract and in paying the amount was prudent. Heiner was employed by the court to superintend the work, and for his services was paid $1050. His employment was proper and necessary and the amount paid him was a reasonable sum. It was shown by the evidence that the courthouse in its unfinished state was of the value of $54,000, as estimated by Heiner, and that its value, when finished, over and above the contract price, exclusive of furniture and cesspool, was $9960. The reasonable value of the wood and steel furniture provided for in the specifications was $4200; the cesspool and connections were worth $100. It appeared from the evidence that there were delays in the work before

the date the county took possession of the building amounting at least to the number of days found by the jury.

8. It became necessary for the Commisisoners Court in order to complete the building to incur a further debt. Of the $70,000 in bonds provided for in the original order of May 15, 1894, $60,000 had been paid and delivered to Watson in the course of the construction of the building before it was taken charge of by the county, leaving unexpended at that time $10,000. The contract for the completion of the building was awarded to Stadtler & Lucas, on January 18, 1896, and entered into on that date, but the contractors were told by the commissioners that the court could not then legally contract for more than $10,000. On February 11, 1896, at a regular session of the court, and when not over $300 had been expended by the contractors upon the building, the Commissioners Court reaffirmed its contract with Stadtler & Lucas, and ordered the execution and issuance of $22,000 in bonds in addition to the $70,000 previously ordered. A proper tax was duly levied to provide for the payment of the bonds as required by law, which did not exceed the per cent authorized to be levied.

*Conclusions of Law.*—1. Appellants have presented a number of assignments of error upon the question of the abandonment of the contract by Watson. Their contention is that Watson never intended to abandon the contract and never in fact did so. In our conclusion of facts we have stated some of the evidence which supports the verdict of the jury in finding that the Commisioners Court was justified in treating the contract as abandoned, and taking steps as prudent men to complete the building. As fixed by the contract the date for the completion of the courthouse was June 22, 1895. Prior to that time there had been many delays in the work and the building lacked a great deal of completion. The subcontractor, Clarke, soon became insolvent and abandoned all work, and his sureties through a trustee undertook to go on with it. The Commissioners Court allowed them to proceed, and on October 3, 1895, directed the issuance of the third installment of bonds to Watson, his sureties having agreed thereto. Delay in the prosecution of the work again arose, and work ceased altogether as early as December 12, 1895. There is evidence to the effect that it ceased some time before that date. Watson was insolvent and unable to undertake the work and finish the building himself, and could get no assurance from the sureties of Clarke that they would resume work. While matters were at this stage, Helwig, the superintendent of Watson, reported to the court the condition of the building as open and subject to damage from the weather, and urged the necessity of completion thereof. The county was also without a courthouse, and the delay in the completion of the building had already extended to six months. As prudent men the Commissioners Court were justified in treating the contract as abandoned, and in taking steps to protect the building and complete it. Such is our conclusion, and the jury in so finding must be sustained. This disposes of the thirteenth, fifty-fifth,

and forty-third assignments of error.  Upon the question of abandonment and the right of the Commissioners Court to take charge of the building and complete the same, the court instructed the jury, in defining the issues submitted to them, that the plaintiff alleged that Watson broke his contract undertaking when only partially performed by wholly abandoning the same under such circumstances as imposed upon the plaintiff the right and also the duty of completing the work and undertakings unperformed by Watson; and that the defendants denied the breach of the contract and alleged that Watson had never abandoned the same, and that plaintiff wrongfully took possession of the building and prevented the performance of his contract by Watson, and that the delay was justified by the acts of plaintiff.  Then, among other instructions that followed, the court charged the jury:

"9. If you believe from the evidence that Watson made faithful performance of his contract undertakings with De Witt County, and that the breach of said contract was not due to his default, then you will not consider any further matter in this case, but you will find for defendants.

"10. If you believe that Watson did not comply with his contract with DeWitt County, and that said contract was broken by the default of Watson, and said default was not excused in view of other portions of this charge, you will find for plaintiff.

"11. If you believe from the evidence that the breach of this contract was caused by the unwarranted acts of both the county and Watson, viewed in the light of the contract and the actions of both parties in relation thereto, you will find for the defendants."

These paragraphs of the charge have been assigned as error for the reason stated that the court failed to state the law applicable to the pleadings and the facts, and because they were misleading in that the jury might infer that any character of default by Watson in the performance of his contract would authorize the plaintiff to treat it as forfeited.  Having stated the issues as above shown, the court in the other paragraphs of the charge place the right of the plaintiff to treat the contract as abandoned upon the want of performance by Watson, and charged the jury affirmatively that if Watson had not abandoned his contract and plaintiff wrongfully took possession of the building and prevented performance by Watson, to find for the defendants.  Taking into consideration the other parts of the charge, we do not see that the paragraphs complained of could have misled the jury, or that they are subject to the exceptions taken.  There is no assumption in the eleventh paragraph that there had been any default on the part of Watson.  The sixteenth paragraph of the charge does not shift the burden of proof to the defendants, but is a proper affirmative charge in favor of the defendants, that if Watson had not abandoned his contract plaintiff could not recover.  The seventeenth paragraph of the charge is not subject to the objection made.  In the nineteenth paragraph the jury were correctly instructed that the recitals in the orders of the Commissioners Court were not evidence of the facts

of delay and abandonment, but it is evident that this instruction was favorable to the defendants.

The court did not err in refusing the special instructions as complained of in the eighteenth, twenty-second, thirty-second, thirty-fourth, and thirty-fifth assignments of error. The word "abandonment" needed no definition, and a peremptory instruction that Watson had not abandoned his contract was not authorized by the evidence. The charge of the court construing the order of the Commissioners Court made October 3, 1895, was correct. Even if the effect of that order had been to extend the time for the completion of the contract to February 15, 1896, an abandonment thereof by Watson prior to that time would have been ground for rescission by the county. Hence there was no error in refusing special instructions numbers 10 and 18 requested by the defendants. Requested instructions numbers 11, 15, and 22 were all properly refused. While time was not of the essence of the contract, that did not become an issue in the case. The jury had already been instructed that if Watson had not abandoned the contract the county could not recover.

2. Helwig's report was properly received in evidence. It was made to the Commissioners Court about the condition of the building, and was pertinent to the inquiry, both as to the question of delay and the necessity of assumption of the work by the county. It was admissible against Watson, because Watson and Helwig were both before the Commissioners Court on December 27, when the report was shown to Watson and it was demanded of him that he resume work at once. He did not dispute the correctness of the report, but asked time to see the Galveston parties. Even if the objection were good when taken to the admission of the original report, the force of it is destroyed by the subsquent admission in evidence without objection of the subsequent report dated December 29th, in which Helwig stated, in explanation of the report in question, that the former report did not say, nor did he say, that the work had not been done strictly according to plans and specifications; that on the contrary, so far as it had progressed, the building was "a true and workmanlike job;" that what he wished to say was "that the building in its present unfinished state will be liable to great damage in view of the coming season, if the same is not roofed in at once, and the openings in the buildings closed, and that unless said work was resumed at once I was unwilling as a professional man to assume the consequence of delay."

We do not hold that the report was not admissible as coming from the agent of Watson superintending the construction of the building, but that is a more difficult question which we do not consider necessary to decide. This disposes also of the demurrer to the paragraph of the petition setting up the report as inducement to the action of the Commissioners Court in taking possession of the building.

3. If in default Watson was not entitled to recover anything for the plans and specifications furnished by him for the courthouse. They were a part of his bid and contract. The method adopted by the Commissioners Court for the submission of bids was that each contractor should

bid upon plans and specifications furnished by himself. The court then did not err in sustaining an exception to that part of the defendant Schneider's answer seeking to set off the value of the plans against plaintiff's claim for damages; nor consequently in refusing to receive evidence of the reasonable value of the plans and specifications.

4. In the eleventh assignment of error, the action of the court is complained of in giving the instructions to the jury embraced in the twentieth paragraph of the charge. Upon the trial the witness Edgar testified about having a conversation with Helwig in order to fix a date, and stated that Helwig said "it was a damned shame that the work on the courthouse had stopped," etc.

The objection to the charge is that (1) the court failed to instruct the jury that Edgar's testimony should not be considered by them, and (2) the court in effect instructed the jury that they might consider any delays which may have accrued in the construction of the building as circumstances tending to show that defendant Watson had abandoned his contract. The charge was as follows:

"The testimony of the witness Edgar as to a declaration by Helwig made a few days before his death as to delay in the work, just prior to and at the time of said declaration, was not admitted as evidence of any such delay, but same was only admitted as a circumstance testified to by the witness tending to fix in said witness' mind the fact that there was such a delay, and when same occurred. This portion of the charge must not be considered by you as in anywise interfering with your province to determine for yourself the credibility of said witness Edgar, or the weight to be given his evidence, but is simply intended to limit the effect of said testimony of said witness."

A reference to the bill of exceptions taken by the defendants to the admission of the testimony of Edgar will show that the witness testified that just previous to the taking possession of the building by the county there had been a considerable time during which no work had been done on it. On cross-examination the witness could not fix the day when the work ceased, but could fix a date of delay by a circumstance, which defendant's counsel told him not to state. On direct examination he was asked to state the circumstance to which the defendant, without knowing what it was, objected. The witness stated to the court the conversation with Helwig as fixing the date. Defendant again objected, and the court thereupon told the jury that Helwig's statement was not evidence of delay and that they must not so consider the same, and must not consider any expression of Helwig's that it was a "damned shame" or any statement made by him in said conversation as evidence; that only the fact of the conversation was admitted, and that for the purpose of fixing the date of the delay. The substance of the conversation was not admissible, and not having been admitted in fact, there was no error in the charge.

5. Upon the measure of damages the court instructed the jury as follows:

"In the event you find for the plaintiff De Witt County, you are instructed as follows as regards the measure of damages:

"(1) You will determine from the evidence the value of said courthouse building, exclusive of all furniture and cesspool, if said building had been faithfully completed in acordance with the plans and specifications of Watson's contract, and according to said contract, and if same is in excess of $70,000 you will deduct from such value as determined by you the said sum of $70,000 and award the difference as one item of damages, stating the same thus: 'To difference between contract price and value of building proper, $......'

"(2) You will determine the value of the building when taken possession of by the county, and also the amount paid by the county to Watson or under his order, and if said amount so paid is in excess of the value of said building as determined by you, you will award such excess as one item herein, stating the same thus: 'To amount excess payment to Watson, $......'

"(3) You will find from the evidence the fair and reasonable value of the wooden and steel furniture which you deem from the evidence was requisite to comply with the provision of said contract to furnish the district and county court rooms and all offices and district and county clerks' record rooms, and all vaults complete, the wooden furniture to be of natural oak, and all document files, roller shelves, etc., to be of the best steel manufacture, and this value, as you find the same would have been if said contract of Watson as regards said furniture had been complied with, you will award as another item of damages, stating the same thus: 'To value of wood and steel furniture, $......'

"(4) You will find from the evidence the fair value of the cesspool and six-inch rim tile pipe connection with said building, if completed under said Watson's contract, the same to be a fit cesspool for said building, and you will award another item of damages, stating the same thus: 'To value of cesspool and connections, $......'

"(5) If you see fit so to do under the evidence, you will award plaintiff the sum of $5 per day for each and every day's delay after June 22, 1895, and up to December 30, 1895, which you may think plaintiff entitled to under the provisions of the contract as to delays, and with due regard to the excuses on the part of said contractor for the same, as pointed out in former paragraph of this charge, and the actions of plaintiff as regards such delays, if any, and in any event making due allowance for the thirty days as rainy days of which notice was given under such contract as admitted by plaintiff, and such sum as you may find under this head, you will also state as separate item, stating same thus: 'To ...... days delay at $5 per day, $......'

"(6) In the event you find for the plaintiff, and believe from the evidence that the said Commissioners Court acted as men of ordinary prudence would have acted under similar circumstances in employing the architect Heiner, and also believe that a necessity existed for such em-

ployment, justifying such employment in view of all the circumstances in this case, you will also award the plaintiff the amount as found by you from the evidence, of the value, if any, of such services performed by said architect; but in the event no necessity existed for his employment, or same was unwarranted expenditure not proximately produced by any breach of said contract, you will not award any sum under this head as an item of damages. In the event you award damages under this head, you will state the same thus: 'To architect's fees, $......'

"(7) You will award plaintiff interest on all said items of damages which you may award, from May 20, 1896, except upon said cesspool item, upon which, if awarded by you, you will only award interest from January 1, 1897, and you will so state in your verdict.

"(8) In the event you find for the plaintiff, you will carefully consider the evidence as regards each item named above, and you will not award same to plaintiff unless you believe from the evidence that plaintiff is entitled thereto, nor will you fail to award such item if you think from the evidence plaintiff is justly entitled to the same under the evidence and this charge."

Appellants requested the following instruction, which was refused: "At the request of the defendants, the jury are instructed that if they find from the evidence defendant A. O. Watson abandoned his contract undertakings with the plaintiff, and that plaintiff is entitled to recover damages for such abandonment, then you are instructed that in fixing the amount of such damages, you will find from the evidence the reasonable value of the building, when completed and furnished in accordance with the contract; then find the actual amount expended by the plaintiff in completing said building, and the excess of said amount over the reasonable value of said building, if any, will be fixed by you as the damages to which plaintiff is entitled, and you may, in addition to such damage, allow the plaintiff such amount as you find due under said contract for delay in the completion of said building."

There was manifestly no error in refusing this requested instruction; but the appellants have assigned error upon the charge that it does not give the true measure of damages. Ordinarily in a case like this where a contractor fails to finish a house which he has undertaken to build, and the owner of the house has taken charge of and completed it, the measure of damages would seem to be the reasonable cost of completion. Gonzales College v. McHugh, 21 Texas, 257; Hillyard v. Crabtree, 11 Texas, 264.

If the contract is to furnish material and make an improvement for a person upon his land and there is a breach of the contract, but the improvement, so far as completed, is valuable to the owner, the owner would be entitled to recover as measure of damages the difference between the value of the improvement when completed according to contract and the contract price. He would be liable, however, for the value of the structure so far as completed. This appears to have been the measure of damages applied in the case of City of Sherman v. Connor & Oliver, 88 Texas, 35. The city had entered into a contract with Connor & Oliver to build

a system of waterworks of the capacity of 250,000 gallons of water daily. The waterworks constructed furnished only 50,000 gallons a day. This was held not to have been a substantial compliance with the contract, but the city having taken possession of the works, became liable for the reasonable value thereof upon an implied contract to pay therefor. The value of the works was ascertained to be greater than the amount which had been paid by the city, and it was held that the contractors might recover the difference, but it was also held that "the measure of damages the city was entitled to recover for breach of the contract was the difference between the contract price of the works, $78,205, and what the works would have been worth if completed according to contract; that was, the benefit or profit the city would have reaped from the performance of the contract." Porter v. Burkett, 65 Texas, 386. The charge of the court submitted the same measure to the jury in this case, and the finding of the jury was in favor of the county for the sum of $9960, which was found to be the value of the building proper as completed over and above the contract price. This finding is fully sustained by the evidence. The verdict of the jury in response to the charge of the court was as follows:

"We, the jury, find verdict for plaintiff against A. O. Watson and sureties, D. M. O'Connor and J. P. Schneider, as below stated:

| | |
|---|---|
| "To difference between contract price and building proper.. | $9,960.00 |
| "To amount excess payment to A. O. Watson.............. | 6,000.00 |
| "To value of wood and steel furniture................... | 4,200.00 |
| "To 95 days delay, at $5.00 per day..................... | 475.00 |
| "To architect's fees ................................... | 1,050.00 |
| "To interest from May 20, 1896, to May 20, 1897, on $21,685.00 at 6 per cent................................. | 1,301.10 |
| "To value of cesspool and connections................... | 100.00 |
| "Total ........................................... | $23,086.10" |

If it should be considered that the reasonable cost of the completion of the building furnished the most direct and appropriate measure of damages, an examination of the evidence will show that the value thereof over and above the contract price, was arrived at by the jury from evidence admitted, without objection by either party, to show what the cost of construction and the cost of completion would be. Both parties introduced evidence to that effect. The jury must necessarily have determined the difference between the contract price and value of building after completion from evidence of cost of completion. The court erred in instructing the jury to subtract the full sum of $70,000 from the value of the building when completed, because this sum included the furniture and cesspool, but the error was in favor of the appellants. It would also seem to render immaterial any error in authorizing the jury to find for the value of the furniture as a part of the damages.

In the form in which the measure of damages was submitted to the jury, only the excess of value was determined as one item, and it became

necessary to adjust the question of payment with reference to the value of the work as far as completed in order to reimburse the county for overpayment. Here again the value of the unfinished work was arrived at by an estimate of the cost thereof. We do not see how the defendants have been injured by the measure of damages as submitted by the court.

Passing briefly upon each item thereof, we find that the sum of $6000 allowed in favor of the county was properly allowed, since there was evidence that the county had paid Watson that amount in excess of the value of the building. It was not a double recovery. It comes within the rule announced in the City of Sherman v. Connor & Oliver, supra. Having made default in his contract and it having become necessary for the county to take charge of the building, it was proper for the Commissioners Court to employ an architect to advise them about the completion thereof, and to engage his services to superintend the same, and the expenditure of the amount which was allowed by the jury was made necessary by the breach. The offer of Watson to give his services free of charge can not defeat this recovery. His interests were directly antagonistic to the county, and it is clear that his offer could not be accepted.

As construed by the parties themselves, the contract included the furnishing of the courthouse as shown by the specifications. A part of the furniture had been ordered and had arrived at Cuero, when the performance of the contract was abandoned. The plans and specifications were submitted as a part of Watson's bid and were not furnished independently by him. There can be no doubt of the intention of the parties to include the furniture, and the contract is properly so construed. Since there is no specific amount of furniture or character thereof given in the specifications, furniture reasonably suitable for the building was required to be supplied. There was evidence in support of the value thereof as found by the jury. It was shown by the undisputed evidence that the county was entitled to recover stipulated damages for delay to, at least, the amount found in the verdict. From the foregoing it will appear that we do not think the court erred in refusing the special instructions shown by the nineteenth, twentieth, and twenty-fourth, nor in overruling the special demurrer complained of in the forty-eighth assignment.

6. There was no error in overruling the challenge of the defendants to the array of jurors, because they were taxpayers and resident citizens of De Witt County. Revised Statutes, article 3141, forbids generally any person to sit as a juror in a case in which he may be interested directly or indirectly, but by article 791 the inhabitants of a county suing or being sued may be jurors if otherwise competent and qualified according to law.

7. Special charge number 26 requested by the defendants was an elaborate statement of the pleadings and issues. If not properly refused it can not certainly be made the basis for a reversal of the judgment below, since the trial judge sufficiently submitted the issues to the jury under appropriate instructions.

8. The admission in evidence of the order of the Commissioners Court of May 15, 1894, was objected to by the defendants. This was the first

order of the court and the one providing for the issuance of the bonds and the payment thereof and the advertisement for bids. The objections are: (1.) The order was not attested by the county clerk, and a legal quorum was not present when the minutes were signed by the county judge. (2.) It was void because it purported to levy a tax to pay a debt not then created, and to pay bonds to be issued in the future. Article 1527 of the Revised Statutes (1879) provided that the minutes of the Commissioners Court should be signed by the county judge or the member of the court presiding at the end of each term, and attested by the clerk. The minutes of the term at which the order of May 15, 1894, was entered were signed at the end of the term by the county judge, but not attested by the clerk. All of the members were present when the order was entered and a quorum was present when the county judge signed the minutes. The book from which the order was read was admitted to be the regular record book of the proceedings of the Commissioners Court of De Witt County. The statute requiring the clerk to attest the minutes is directory only, and they should not have been rejected because not so attested. In the case of Brown v. Reese, 67 Texas, 318, cited by appellants, there was no record at all. There was only indorsement of amount due on a school warrant entered thereon signed by the county judge.

It was entirely competent for the Commissioners Court, as it did in its order of May 15, 1894, to determine the necessity of building a court-house and to make provision therefor by the issuance of bonds. It was not necessary that the provision for the issuance of the bonds and the levy of the tax for the payment thereof should be simultaneous with the creation of the debt for the erection of the building. Mitchell County v. Bank (Texas Sup.), 43 S. W. Rep., 880. The order was made at a regular term of the court with all of the members present. The subsequent sessions at which the bids were considered and the contract awarded, and the bond approved, were special sessions of the court, and the action of the court thereat was not in contravention of law. Upon a full examination of the action of the Commissioners Court at the several sessions thereof, we are of the opinion that the bonds were valid and the contract and bond sued on were legal and binding. What we have said includes the orders of January 17 and February 11, 1896, contracting for the completion of the building and issuing additional bonds therefor. If there be anything in the objection that the county judge and commissioners were sitting as a board of equalization when the contract was made, and we do not think there is, the contract was subsequently reaffirmed and approved at the special session when the bond was acted on.

9. The claim for stipulated damages for delay was properly joined with the action for damages for the breach of the contract to build.

There is no error for which the judgment of court below should be reversed, and it will therefore be affirmed.

*Affirmed.*

Writ of error refused.