## McINNIS et al. v. BROWN COUNTY WATER IMPROVEMENT DIST. NO. 1.

### No. 7585.

Court of Civil Appeals of Texas. Austin.

June 3, 1931.

Supplemental Opinions, June 17 and 24, 1931.

Rehearing Denied June 24, 1931.

Wilkinson & Wilkinson, of Brownwood, and J. W. Stovall, of San Angelo, for appellants.

McCartney & McCartney, of Brownwood, and Critz & Woodward, of Coleman, for appellee.

## McCLENDON, C. J.

Appeal in a condemnation proceeding in which judgment was rendered condemning the fee to a portion of appellants' land and an easement upon other portions.

Appellee, plaintiff below, is a water im- provement district, created under the provi- sions of chapter 2 of title 128, R. S. of 1925 (article 7622 et seq.). Its general purpose was to construct a large reservoir by damming the waters of Pecan bayou, in order to pro- vide a water supply for the city of Brown- wood. This dam when constructed would per- manently inundate a portion of appellants' lands bordering on the stream and some of its tributaries when the reservoir was filled to spillway level, and would in flood times temporarily inundate additional lands. A portion of appellants' lands would be entirely surrounded by the waters of the reservoir, thus creating a small island; and a small portion would be isolated from the main body. The proceeding sought and obtained condem- nation of the fee to this land and permanent- ly inundated portions of the lands, including the bed of Pecan bayou, and an overflow ease- ment in the land temporarily inundated in flood seasons. Other details of the decree will be noted below.

Disqualification of the county judge and members of the board of commissioners is urged on account of the fact that they were taxpayers in the district.

As to the judge this contention is over- ruled on the authority of Hubbard v. Hamil- ton County, 113 Tex. 547, 261 S. W. 990; City of Oak Cliff v. State, 97 Tex. 391, 79 S. W. 1068; City of Dallas v. Peacock, 89 Tex. 58, 33 S. W. 220, distinguishing City of Austin v. Nalle, 85 Tex. 534, 22 S. W. 668, 960; City of Dallas v. Armour & Co. (Tex. Civ. App.) 216 S. W. 222 (error refused).

As to the commissioners we overrule the contention on the authority of Moore v. Dallas (Tex. Civ. App.) 200 S. W. 870, 871; Watson v. De Witt County, 19 Tex. Civ. App. 150, 46 S. W. 1061; City of Marshall v. Mc- Allister, 18 Tex. Civ. App. 159, 43 S. W. 1043.

R. S. art. 7880—132 (a), as amended in 1929 (Acts 41st Leg. p. 578, c. 280, § 14), provides that if a member of the board "be personally interested, either directly, or indirectly * * * in a particular proposed assessment or other determination," he shall certify his disqualification. This language is substan- tially the same as that employed in article 2134, subd. 2, disqualifying jurors where "in- terested, directly or indirectly, in the subject matter of the suit." In Moore v. Dallas, above, in construing this language the court say: "It is not believed that the difference in the wording of the statute relating to the disqualification of judges and that relating to the disqualification of jurors materially af- fects the question." The interest of a taxpay- er, in either case is too remote and contingent to disqualify.

Chapter 7, page 120, 5th Called Session of the 41st Legislature, 1930 (Vernon's Anno-

744

tated Civ. Stat. art. 7807a), grants to water improvement districts the right "to acquire by condemnation lands, easements and other property and the fee simple title, easement or right-of-way in, over and through all lands, private and public, except as hereinafter indicated, necessary for making, constructing, maintaining, operating, policing and protecting dams, reservoirs, canals, laterals, pumping sites, drainage ditches, levees and all other improvements necessary and proper for such districts, including sites for construction and working purposes." Section 3 of the act (Vernon's Ann. Civ. St. art. 7807a, § 3) provides that "the assessing of damages and all procedure with reference to condemnation, appeal and payment, shall be in conformity with the Statutes as provided in Title 52 of the Revised Civil Statutes of the State of Texas relating to eminent domain," with certain provisos not pertinent to this appeal.

■■ In the oral argument and by supplemental brief appellants for the first time raise the issue that the act in question is unconstitutional in so far as it attempts to confer jurisdiction on the county court to condemn the fee to land as being in conflict with sections 8 and 16 of article 5 of the Constitution, the former of which confers jurisdiction on districts courts "of all suits for trial of title to land," and the latter excludes from county courts' jurisdiction all suits "for the recovery of land."

We overrule this contention on two grounds.

1. A condemnation proceeding is not a suit within the meaning of the invoked constitutional provisions. It is not a trial of the title to land nor does it involve the recovery of land. Unless title in the condemnee is admitted the county court is without jurisdiction. This, we think, clearly follows from the holdings in Buffalo Bayou, B. & C. Ry. Co. v. Ferris, 26 Tex. 588, and San Antonio v. Grandjean, 91 Tex. 432, 41 S. W. 477, 44 S. W. 476, from the former of which we quote (Justice Moore writing): "The constitutional provision that the 'right of trial by jury shall remain inviolate,' does not apply to the case of taking private property for public use, but to suits in courts of justice; to some known and fixed mode of judicial proceeding, for the trial of issues of fact in civil and criminal causes in courts of justice." This language is peculiarly apt to the invoked jurisdictional provisions of the constitution.

■ 2. It was held in Gulf, C. & S. F. Ry. Co. v. Tacquard, 3 Willson, Civ. Cas. Ct. App. § 141, that the statute conferring jurisdiction on county courts in condemnation proceedings was authorized by section 22 of article 5 of the Constitution, empowering the Legislature "by local or general law, to increase, diminish or change the civil and criminal juris-

diction of County Courts." This decision has had express approval of the Supreme Court in Southern Kansas Ry. Co. v. Vance, 104 Tex. 90, 133 S. W. 1043, and Gulf Coast Irr. Co. v. Gary, 118 Tex. 469, 14 S.W.(2d) 266, 271.

This jurisdiction has been exercised by the county court from the earliest times, and whenever questioned its constitutionality has always been upheld. Its validity is not an open question.

■ We do not think there is merit in appellants' further contention that the Legislature has not conferred upon the county court jurisdiction to condemn the fee because article 7807a, § 3, confers jurisdiction by reference to title 52, R. S., which specifically excludes any procedure with reference to the acquisition of the fee-simple title. Article 3270 of that title provides: "Except where otherwise expressly provided by law, the right secured or to be secured to any corporation or other plaintiff in this State, in the manner provided by this law, shall not be so construed as to include the fee simple estate in lands, either public or private." This language clearly contemplates condemnation of the fee by the procedure in this title, where, as in the instant case, it is "expressly provided by law."

By their first proposition appellants assert generally the unconstitutionality of the act in so far as it authorizes condemnation of the fee.

It is not entirely clear from the brief whether they contend that such power could not be granted by the Legislature in any case.

■ Eminent domain, or the power to take private property for public use, is an inherent and inalienable attribute of sovereignty. Its delegation to the Legislature is implied from the general grant of legislative power; requires no express authority; and constitutional provisions touching it are generally regarded as limitations upon the legislative authority. See 20 C. J. p. 513, § 1; 10 R. C. L. p. 11, § 9; Lewis on Eminent Domain (3d Ed.) vol. 1, pp. 20, 21, §§ 9 and 10.

■ This power extends to every species of property and every character of right, title, or interest therein, including the fee to realty. Authority upon this subject is abundant and uniform. 20 C. J. p. 1221, § 582; Lewis on Eminent Domain (3d Ed.) vol. II, p. 743, § 411.

Although there have been in this state a number of legislative acts authorizing condemning the fee, their constitutionality in this regard appears never to have been brought in question. The first of these acts was that passed in 1901 under which the Galveston sea wall was constructed (chapter 12, p. 23, General Laws 1st Called Session 27th Leg., 1901). Section 3 of that act empowered the county commissioners and city authorities "to take

the fee simple estate to the land condemned or acquired hereunder, whenever deemed necessary for the purposes of this act." Proceedings under the act were upheld in Johnston v. Galveston County (Tex. Civ. App.) 85 S. W. 511, but its constitutionality on the ground under discussion does not appear to have been raised.

Appellants' contentions, as we gather them from the brief and argument, may be reduced to two propositions:

1. The fee is not essential to the public uses for which the property is taken under the statute, in that an easement would be sufficient to all such uses, and therefore condemnation of the fee amounts to a taking of private property, not for public, but for private use, and violates the last clause of article 1, § 17, of the Constitution (Bill of Rights) reading: "All privileges and franchises granted by the Legislature, or created under its authority shall be subject to the control thereof."

2. The discretion which the act vests in the district to determine whether the fee or only an easement be taken is a legislative function which can not be thus delegated.

It is true that the power of eminent domain is limited to the uses of the taking, and that no more property, either in amount or in interest or estate, than is required for such use may be acquired. 10 R. C. L. pp. 88–90, § 78. But the function of determining this question of requirement or necessity is generally held to be a legislative (political power) and not a judicial one, and subject to review by the courts only where there has been a palpable abuse of authority. 20 C. J. pp. 624–626, § 111.

Appellants cite in this connection the following quotation from Gulf Coast Irrigation Co. v. Gary, above: "In a condemnation proceeding by an irrigation company, under the laws of this state, the irrigation company does not take a fee-simple title to the land condemned, but merely takes an easement that carries no greater dominion by the irrigation company than is proper and needful to carry out the purposes for which the land is taken. The principle upon which such companies are allowed to exercise the right of eminent domain is not that they may do what they please with the land condemned, but that they may do what is reasonably needful to carry out the purposes for which the land is taken. Anything beyond this is not the taking of private property for public use, but the taking of private property for private use."

The question there had nothing to do with the power of the Legislature to grant the right to condemn the fee; the statute under consideration did not authorize its condemnation; and the quoted language of the learned judge who wrote the opinion, when read in the light of the subject under consideration, is not susceptible of the construction which appellants seek to place upon it. The decision is not authority for their contention here under consideration.

The following quotation from Sweet v. Buffalo, N. Y. & P. R. Co., 79 N. Y. 293, epitomizes the generally accepted view upon this subject: "When the statute authorizes the taking of a fee it cannot be held invalid, or that an easement only was acquired by proceedings thereunder, on the ground that in the judgment of the court the taking of an easement only would accomplish the public purpose which the Legislature had in view. That is a legislative and not a judicial question."

The grant of power to water improvement district, to condemn the fee to real estate necessary to the construction of permanent public works, including the erection of large dams impounding great bodies of water in lakes and reservoirs which permanently inundate large tracts of land, cannot be properly classed as a legislative abuse subject to judicial review. The importance of the purpose for which such districts are formed was emphasized by the fact that the general legislative grant under which they are created was the subject of a specific amendment to the Constitution (section 59 of article 16). This amendment declares those districts to be "governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law."

Passing to the second proposition, the language just quoted we believe is an express grant to the Legislature to delegate to such districts the power to determine whether, and as to what lands, the fee or an easement should be taken.

But aside from this we think the proposition not well taken. There is no difference in principle, we think, between the power to determine what property is necessary to be taken and the power to determine what title or estate is necessary to be taken. That the Legislature may lawfully delegate to other instrumentalities, even to private corporations, the former of these powers is generally recognized. Crary v. Port Arthur Channel Co., 92 Tex. 275, 47 S. W 967; Van Valkenburg v. Ford (Tex. Civ. App.) 207 S W. 405; Pecos & N. T. Ry. Co. v. Malone (Tex. Civ. App.) 190 S. W. 809; 20 C. J. p. 626, § 112; 10 R. C. L. p. 183, § 158.

The statutes of a number of states delegate to corporations or other legislative agencies the power to determine whether the fee or only an easement be taken. These statutes have been upheld wherever brought in question.

746

By several propositions appellants contend that there was no necessity for taking the fee to the several parcels covered by the decree. The only lands as to which the fee was taken, were those below spillway level and the island tract. The latter would be permanently isolated from all other lands of appellants, and its use would necessarily be reduced to narrow limits. The grounds upon which the district claimed the fee to the island necessary, were that its location in the reservoir rendered it essential for policing purposes, and its natural beauty and location would make it desirable for summer residences, and its use as such would result in pollution of the waters of the reservoir. The action of the district in determining that it was necessary to take the fee to the specified areas is only subject to judicial review in case of palpable abuse. No abuse was shown in this case. Crary v. Port Arthur Channel Co., above.

While it was proved that the governing board of the district had determined the necessity for condemnation of the fee, there was no pleading to that effect, and this omission is urged as error. Condemnation is a statutory proceeding, a special procedure for which is prescribed. R. S. title 52 (article 3264 et seq.). Appellee's petition contains every allegation required by this procedure (R. S. art. 3264), and it is therefore not subject to the objection urged. Gulf, C. & S. F. Ry. Co. v. Ft. Worth & R. G. Ry. Co., 86 Tex. 540, 26 S. W. 54. This holding disposes of propositions 12, 13, 14, and 15.

Appellants complain of recitations in the court's charge to the effect that appellee alleged and proved that the directors had determined that the fee was necessary. As already stated, the proof was made but the allegation was not. The recitation as to the pleading, though erroneous, had no material bearing on the case, in no way affected any issue submitted to the jury, and was therefore harmless.

In addition to the fee, as stated, appellee was awarded every right of every character which appellants had in the permanently submerged land, preventing them from making any use of said land, or from going on, in, through, or upon said waters for any purpose whatsoever, and from making any use of the waters of the reservoir at any level, except to use the water for live stock and domestic purposes.

This portion of the decree is assailed on the ground that it deprives appellants of riparian rights attaching to the use of the remainder of their lands, which rights constitute an interest in land and cannot be taken by condemnation.

That such rights constitute property and an interest in land is well settled. The right of eminent domain, however, as above stated, extends to every species of and every interest in property. See McGhee Irrigation Ditch Co. v. Hudson, 85 Tex. 592, 22 S. W. 398.

The remaining propositions complain of the charge on the measure of damages.

In each instance where this issue was submitted the jury were asked to find the "market value," the definition of which was given as follows: "In determining the market value of the property all the uses to which it may be applied, and to which it may be adapted are to be considered. And in this connection you are instructed that the market value of property is the price which it will bring in cash when offered for sale by one who desires to sell, but is not obliged to sell, and is bought or purchased by one who desires to purchase it, but is under no necessity of doing so."

This measure of damages and definition of "market value" accord with the generally accepted measure and definition in condemnation cases. 10 R. C. L. p. 128, § 112; 20 C. J. p. 727, § 187. The rule in this state is not otherwise. This is conceded by appellants. They contend, however, that our statute (R. S. art. 3265, subd. 2) prescribing such measure is a limitation on the constitutional requirement for "adequate compensation." To quote from their brief: "The contention is that 'Market Value,' as used in the charge is not adequate compensation as expressed in the constitution, section 17, art. 1." No authority is cited for this proposition. Constitutional provisions of other states and of the federal government use the same or similar language; and the above general rules have been followed in interpreting such language. No adequate reason for departing from the general rule has, in our opinion, been advanced by appellants.

The remaining objection to the charge is in the use of "in cash" in the quoted definition. While the particular question does not appear to have been often raised, we find the expressions "market value," "fair market value," "cash market value," and "fair cash market value" used synonymously throughout the reports. See Baucum v. Arkansas Power & Light Co., 15 S.W.(2d) 399; State v. Woodward, 208 Ala. 31, 93 So. 826, 827; from the latter of which we quote: "'Cash' is the antonym of 'credit.' * * * The phrase 'actual cash value' is practically synonymous with 'fair cash value' [and means] the price it [property] will bring in a fair market. * * * A sale on credit would * * * have a tendency 'to increase the number of bidders and to enhance the price.' And that enhancement would vary ad infinitum according to the minitude of the cash payment and the magnitude and duration of the credit."

The trial court's judgment is affirmed.

Affirmed.

BAUGH, J., not sitting.

## Correction of Opinion.

McCLENDON, C. J.

In referring to Revised Statutes, article 7880—132 (a), as amended in 1929, we followed the citation of said article on page 46 of appellants' brief. Appellee calls our attention to the fact that this article relates to water control and improvement districts and not to water improvement districts created under chapter 2, title 128, R. S. 1925. The latter are governed by reference in the particular at issue by the provisions of title 52, R. S. 1925, which provides that the commissioners shall be "disinterested freeholders of said county." The same interpretation should be given this language as we gave to that of R. S. art. 7880—132 (a), in our original opinion.

## Supplemental Opinion.

Upon our holdings regarding jurisdiction of the county court and the power of the Legislature to authorize condemnation of the fee, we cite additionally Houston Independent School District v. Reader (Tex. Civ. App.) 38 S.W. (2d) 610, an opinion by the Galveston court published after our original opinion was handed down.