(100 App. Div. 93)

MURPHY v. UNITED STATES FIDELITY & GUARANTY CO.

(Supreme Court, Appellate Division, Fourth Department. January 4, 1905.)

1. BREACH OF CONTRACT—LIQUIDATED DAMAGES—LIABILITY OF SURETY.

A contract for furnishing plaintiff a quantity of cut stone, to be delivered before a specified date, for the performance of which defendant was surety, stipulated for the payment as liquidated damages of $5 per day "for each and every day thereafter that such work shall remain incomplete." *Held*, that the stipulation contemplated merely a delay in full performance of the contract, and does not limit plaintiff's recovery of actual damages on the abandonment of the contract.

Appeal from Trial Term, Onondaga County.

Action by David Murphy against the United States Fidelity & Guaranty Company. From a judgment for plaintiff for $5,116.66 damages and costs after a trial before a referee, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Thomas Hogan, for appellant.
William F. Hodge, for respondent.

SPRING, J. On the 10th day of August, 1901, the plaintiff entered into an agreement with the city of Syracuse to erect the Carnegie Library building in that city. The price to be paid was $133,897, and the building was to be completed on or before November 1, 1902. The contract contained a provision that, in the event of the failure to

complete the building at the stipulated period, delay from inclement weather, strikes, etc., excepted, the contractor should be charged with a per diem sum as damages to be fixed by the building committee representing the city in the construction of the building. The contractor executed and delivered a bond to the said city in the penalty of $66,949 for the faithful performance of the agreement by him.

On December 7, 1901, the plaintiff entered into an agreement in writing with the G. K. Perry Stone Company, of Indiana, whereby said stone company agreed to furnish and deliver, f. o. b. Syracuse, the cut stone required in the erection of said building for the sum of $23,000. Said stone was to be Bedford, Ind., cut stone, and prepared conformably to the specifications which were a part of the plaintiff's contract with the city, and it was all to be delivered on or before August 1, 1902. The agreement provided that if Perry & Co. should fail to finish the work within the stipulated period it should pay as liquidated damages $5 per day "for each and every day thereafter the said work shall remain incomplete." The stone was to be used during the erection of the building, and payments were to be made as fast as the stone were supplied. It is therefore a fair deduction that the parties expected the deliveries of the stone would be made in substantial quantities during the spring and early summer of 1902, in order that the erection of the building might be hastened forward in the favorable season of the year.

The defendant is a surety and guaranty company located at Baltimore, Md. It duly executed to the plaintiff its bond in the penalty of $6,000, bearing date March 5, 1902, indemnifying him against loss by reason of the failure on the part of the said Perry & Co. to perform the aforesaid agreement. The bond contained the following condition:

"Now, therefore, the condition of the foregoing obligation is such that if the said principal shall well and truly indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants and conditions of the said contract on the part of the said principal to be performed, then this obligation shall be void; otherwise to remain in full force and effect in law."

The bond also contained the condition that the defendant should have the right to complete the said contract with the G. K. Perry Stone Company in case the said principal defaulted in the performance thereof.

Perry & Co. commenced the delivery of the stone pursuant to its agreement, but on the 1st of July, 1902, it had shipped to the plaintiff only about one-tenth of the quantity called for by its contract. The fact became apparent that the stone would not be delivered by August 1st, and the prosecution of the building was much retarded by the delay of Perry & Co. On July 2d the plaintiff advised the defendant by letter of the small amount of stone already delivered, and of the probable default in performance by its principal. The defendant was represented by local agents in the city of Syracuse, who had been apprised of the delay to the plaintiff by reason of the failure of Perry & Co. to supply him with stone in the quantities intended when the agreement was made. These complaints were repeatedly made to said agents during the month of July, and they were communicated to the defendant. The plaintiff also directly informed it during the month of

July that no stone whatever had been delivered since July 1st, and none in fact was shipped to the plaintiff after that date. The defendant, therefore, even before the expiration of the period for the performance of the agreement, was fully advised of the real situation, and of the likelihood that there would be a default by its principal. It made no attempt apparently to urge the prosecution of the work by Perry & Co., or to relieve the plaintiff from the embarrassment caused by the delay in failing to ship the stone in accordance with the evident purpose of the parties.

Perry & Co. defaulted on August 1st, and about that time made an assignment for the benefit of creditors. The plaintiff promptly notified the agents of the defendant in Syracuse of the default, and endeavored to ascertain whether the defendant elected to complete the performance of the work undertaken by Perry & Co. The communications and conferences between these local agents of the defendant and the plaintiff were frequent during the early part of August. The defendant was kept fully informed of them. The plaintiff also several times wrote to the defendant asking for instructions concerning the performance of the Perry agreement, but elicited no response.

In the meantime the plaintiff received bids for the furnishing of these cut stone, which were of a particular variety, and to be furnished as specified in the original agreement with the city. On the 12th of August these agents of the defendant notified the plaintiff to let the contract to the lowest bidder. Immediately the plaintiff accepted the bid of the South Side Stone Company, also an Indiana corporation, for the completion of the work commenced by Perry & Co. The price to be paid was $23,000, and the South Side Company was the lowest bidder for the performance of the work, and the one next above it was for the sum of $35,000. On that day, and after the acceptance of the bid, and after the contract had been executed by the plaintiff, but before it was signed by the South Side Company, the defendant notified its agents to take no action in the matter until further instructions, and plaintiff was advised of said message. He at once requested the South Side Company to defer action, and the matter was held in abeyance until August 18th, when the South Side Company wired the plaintiff asking if it should proceed with the delivery of the stone, and he advised it to do so, and work was commenced at once and the agreement was subsequently executed.

These facts are substantially undisputed, and the referee has properly found that the plaintiff gave the defendant a reasonable opportunity, and deferred action a reasonable time, before entering into any other agreement.

The defendant during the month of July knew of the delay made by its principal, and was fully assured that a default was apt to occur. It was also aware of the importance of prosecuting the work vigorously during the summer season. It, however, made no effort to expedite the work or to prepare for intervention when the crisis was reached. The urgency of the necessity of the plaintiff to obtain the stone was constantly presented to it, but to little purpose. The situation called for energetic and vigilant effort on its part, but it was met listlessly, and with no apparent comprehension of the needs of the plaintiff. Un-

less, therefore, there is some legal objection to the plaintiff recovering the damages he sustained, and which fairly resulted from the failure to perform the agreement by Perry & Co., we are satisfied that the judgment should be sustained.

The defendant contends that the stipulation in the agreement with Perry & Co. providing for an allowance of $5 a day "by way of liquidated damages," is the limit of the plaintiff's recovery, and is a substitute for compensation for any actual damages which he may have sustained. In order to construe a provision of this character, it is necessary to understand the situation at the time of the execution of the agreement and what the parties had in mind by it. They inserted this provision in anticipation of the full performance of the agreement. If Perry & Co. carried out its contract, except that it was not completed by August 1st, the damages for delay were to be limited to the stipulated sum. Neither party contemplated an absolute abandonment of the work by Perry & Co. When that occurred the relations of the parties changed. There was an ending of the agreement, and the burden was then placed upon the plaintiff to go elsewhere to secure the stone which was to be furnished by Perry & Co. His contractual relations with that corporation had ceased. On the other hand, had it performed the work, although extending beyond the prescribed date, the contract would have been in force. By its terms delay in performance had been anticipated and provided for. No provision had been made to meet the unlooked for contingency of total abandonment. The bedrock of the stipulated sum "by way of liquidated damages" was the ultimate fulfillment of the contract, so that the rights of the parties could be gauged by that instrument with the work completed. The language employed is, "Should the contractor fail to finish the work at or before the time agreed upon" the per diem allowance is to be paid "for each and every day hereafter the said work shall remain incomplete," unless "delayed," etc. The only reasonable interpretation which can be given to this provision is the one suggested, that the liability for the stipulated sum did not accrue until the contractor had fulfilled his agreement, and consequently it cannot be available to bar the plaintiff recovering the damages actually sustained by him on account of the renunciation of the agreement. The per diem allowance was not to be paid in lieu of performance, but upon performance after the time fixed in the agreement.

In each of the cases cited by the counsel for the appellant there had been a completion of the contract, or else the controversy turned on the question whether the stipulated sum was intended as liquidated damages or a penalty (Curtis v. Van Bergh, 161 N. Y. 47, 55 N. E. 398; Dunn v. Morgenthau, 73 App. Div. 147, 76 N. Y. Supp. 827), or the actual damages were difficult of ascertainment, or the stipulated amount was vastly disproportionate to the loss (Ward v. The Hudson River Building Co., 125 N. Y. 230, 26 N. E. 256). As was said in Phœnix Ins. Co. v. Continental Ins. Co., 87 N. Y. 400, at page 405:

"The rule deduced from the authorities is that when there is a covenant to do or not to do a particular act, under a penalty, the covenantor is bound to do, or refrain from doing, the very thing, unless it appears from the particular language, construed in the light of the surrounding circumstances, that it was the intention of the parties that the payment of the penalty should be the

price of nonperformance, and to be accepted by the covenantee in lieu of performance. The question to be considered is, what was the primary intent of the agreement? If the primary intent was that the covenant should be performed, the annexing of a penalty is regarded merely as security for the performance of the covenants, and not as a substitute for it."

If the defendant had availed itself of its privilege, and completed the contract of its principal, a different question would be presented. It then would have been subrogated to the rights of the Perry Company, and the contract would have been continued in force and the stone delivered in pursuance of it.

The plaintiff's claim consisted of many items for increased expenses and costs incurred by him for carrying on the work in the winter, and for money expended for freight and other charges, which were enumerated. The referee has found that the South Side Stone Company and the plaintiff diligently pushed the work to completion and did their utmost to avoid loss and extra expense. Despite their efforts the work ran into the winter, and increased costs and expenses were incurred by the plaintiff on that account. Several items of his claim were disallowed by the referee, and it was substantially pared down. While one or two of the items allowed rest on rather a fragile foundation, yet they are supported by the testimony of the plaintiff, and there is very little contradictory evidence to the specific items. The referee had the advantage of the personal presence of the witnesses, and we are disinclined to interfere with the estimate he has made. The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.