## WELLS v. NATIONAL SURETY CO.

### (Circuit Court of Appeals, Third Circuit. April 17, 1915.)

### No. 1923.

PRINCIPAL AND SURETY ⬤⇒117—DISCHARGE OF SURETY—CHANGE IN CONTRACT —ANTICIPATION OF PAYMENTS.

Where a subcontractor under a contract providing that, when payments were received by the principal contractor, the proportionate amount thereof should be paid to the subcontractor, applied to the principal contractor before any payment was due, and before any considerable amount of the work had been done, for financial aid to carry out the work, and the principal contractor thereupon executed his accommodation note to the subcontractor, with the understanding that he should protect himself out of payments due the subcontractor, and hold back the amount of the note therefrom, and that as between him and the subcontractor the note was payable only if the subcontractor should faithfully and properly perform the contract, the transaction was not an independent loan of the contractor's credit to the subcontractor, secured by the subcontractor's rights in the contract, but was an anticipation of the payments due under the subcontract, the effect of which was to reduce the subcontractor's incentive to continue work until the payments regularly became due, and the surety on the subcontractor's bond to the contractor was therefore discharged.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 283–285; Dec. Dig. ⬤⇒117.

Discharge of surety on building contract by change in obligation or duty of principal, see notes to United States v. Walsh, 52 C. C. A. 427; O'Neill v. Title Guaranty & Trust Co., 113 C. C. A. 214; United States Fidelity & G. Co. v. United States, 116 C. C. A. 196.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by Mark P. Wells against the National Surety Company. Judgment for defendant, and plaintiff brings error. Affirmed.

A. L. Moise, of Philadelphia, Pa., for plaintiff in error.
T. R. White, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This is an action against a surety on a subcontractor's bond. Mark P. Wells, the plaintiff below and the plaintiff in error, was the principal contractor, and was engaged in the construction of a convention hall for the city of Philadelphia. The E. E. Wells Contracting Company was a subcontractor, and E. E. Wells, who was in no way related to the plaintiff, was its president. The defendant was the surety on the subcontractor's bond. The undertaking of the surety was that E. E. Wells Contracting Company "shall well and truly perform the terms and provisions of" a contract between it and Mark P. Wells for the excavation, reinforced concrete, cement work, etc., in connection with the erection of the structure. The contract provided, with respect to payments to be made to the Contracting Company, that:

"When payments are received by the said M. P. Wells, proportionate amount of same to be paid to said E. E. Wells Contracting Company in proportion to the amount of work done, reserving therefrom 20 per cent. until the final payment shall be made to said M. P. Wells by said city of Philadelphia."

It is averred that the Contracting Company defaulted in the performance of its contract, and discontinued work, whereupon the plaintiff was obliged to complete the same at a cost of about $5,000 in excess of the contract price, for which recovery is sought against the surety. The defense is that the plaintiff, the principal contractor, materially varied the terms of his contract with the Contracting Company by making a payment to the Contracting Company before payments were due, thereby releasing the surety on its bond. The circumstances which constitute the alleged anticipated payment are as follows:

After the Contracting Company had entered upon its work, and had performed an inconsiderable part thereof, and before any payments were made by the city to Mark P. Wells, the principal contractor, and therefore before any payments were due to the Contracting Company, that concern found itself in need of money with which to prosecute its work. E. E. Wells, its president, called upon Mark P. Wells, the principal contractor, for assistance, with the result that Mark P. Wells gave the Contracting Company his note for $4,000, which, upon indorsement by the Contracting Company, was discounted for its account. Shortly thereafter the Contracting Company discontinued work.

As the nature of the transaction and the intent of the parties control the principle of law to be applied to this case, a recital of the testimony is necessary. Mark P. Wells testified as follows:

"Q. What, if anything, had taken place between you and the E. E. Wells Contracting Company prior to that time with respect to a payment? A. They came to me about the 22d of March and wanted me to lend them my note, to help them finance the job, which I did, an accommodation to them, *understanding that when the payments came due for his part of the work I was to protect myself.* * * * Q. You may state what Wells said and what you said at that time. A. Wells asked me for the note. I told him there was no money due him. He said he knew that, but he did not get as much out of these houses as he thought he would get, and he would be short of money, and if I would lend him the money he thought he could get it discounted. Q You mean lend him your credit? A. Lend him the credit, yes. Q. You do not mean to give him the money, do you? A. No; I did not give him the money. I gave him the note. He did not ask me for money. He asked me for a note. Q. What did you say with respect to protecting yourself? A. I told him as soon as he got that note discounted—it was a third party note—I had no defense to it. He told me *he would have a lot of payments due before the note matured, and I could protect myself out of the funds that would come into my hands, to protect that note.* Q. Then upon that agreement you let him have the note? A. Yes, sir. Q. What did he do with the note? A. He went down to the Union National Bank and had it discounted. * * * When he got that note discounted, *my agreement was that I was to protect myself out of that money.* I had 16 men who threatened to break my head off because Wells owed them money. I did not employ them any more than you did. I did not know them. Q. In other words, you were not to pay the note unless he did his work. Is that it? A. No; I say that I lent him that note, and after he had it discounted *I was to protect myself out of the proceeds of that note, or out of the proceeds of the vouchers coming to E. E. Wells.* Q. *In other words, you were to hold back $4,000?* A. Yes, sir. * * * Q. Before you leave the stand, Mr. Wells, did you pay that note of

$4,000? A. No, sir. Q. Why didn't you pay it? A. Because it was given as an accommodation to Wells. Q. That is not an answer. Why didn't you pay it? A. Because Wells quit the work, and ran off, and had me stuck for $16,000."

Another witness testified as follows:

"A. I remember Mr. E. E. Wells coming down. I was in the same room with Mr. Wells, and Mr. E. E. Wells and he wanted some money, and Mr. Wells said that there was no money due him. There might have been other conversation, which I do not remember. Mr. Wells said he would give him a note as an accommodation for to carry on the work, and Mr. Wells gave him a note for $4,000."

There was introduced in evidence the record of a suit brought by the Union National Bank against Mark P. Wells upon the note in question, in which Mark P. Wells filed an affidavit of defense containing the following:

"That the said note was given by defendant without consideration, and without value received, and as an accommodation to the payee, and that the payee had entered into a contract with the defendant whereby the payee was to perform certain work for defendant as above set forth, and would be entitled to receive from defendant payment of the said note *only* in the event of the payee faithfully and properly performing its contract with the defendant."

Evidently following the law of the case of Fidelity & Deposit Co. v. Agnew, 152 Fed. 955, 82 C. C. A. 103, decided by this court at its March term, 1906, and approved by this court in Justice v. Empire State Surety Co., 218 Fed. 802, 134 C. C. A. 490, decided at the October term, 1914, the District Court found, as a matter of law, that the transaction was an anticipation of payments, and therefore directed a verdict for the defendant.

The directed verdict constitutes the one error assigned, and raises two questions: First, whether the giving of the note and the provision made for its payment constituted an anticipated payment on account of the subcontract, and therefore released the surety, or whether the giving of the note was an entirely independent transaction in the nature of a loan, which, together with the provision for its payment, was wholly separate from and in no way tied up with the future performance of the subcontract and the rights of the parties thereunder; and, second, whether the trial court should have decided that question as a matter of law.

In determining the character of the note transaction, we will consider: (1) The application for assistance made by the subcontractor to the principal contractor; (2) the note which passed between them; and (3) the provision for its payment.

1. The testimony leaves it uncertain whether E. E. Wells applied for a payment on account of work not done, or asked for help in the shape of a note. At all events, no money was paid by the principal contractor to the subcontractor, but a note was given by the former to the latter. Very little information is to be had from the conversations preliminary to the giving of the note, beyond the fact that the subcontractor needed money with which to carry on its work, and that it solicited financial aid from the principal contractor.

2. In rendering the financial aid requested, the principal contractor

gave his own note to the subcontractor for an amount of money not then due the subcontractor under the contract. The note was given with the understanding on the part of both that the subcontractor, the payee, should have the note discounted and with the proceeds continue its work. If the transaction had stopped here, there would have been no case.

3. There was, however, an understanding between the parties as to the manner in which the note should be paid, which in effect was that the contractor should "protect" himself "out of the proceeds of the vouchers coming to E. E. Wells," the subcontractor, for work done under the contract, and that when money under the contract became due the subcontractor, Mark P. Wells, the principal contractor, was "to hold back $4,000," the amount of the note. In that way, as testified by Mark P. Wells, he was to protect himself out of the funds that would come into his hands and which would be due the subcontractor under the contract. It was further shown by the statement of Mark P. Wells:

"That the payee [the Contracting Company] had entered into a contract with [him], whereby the payee was to perform certain work for [him], * * * and would be entitled to receive from [him] payment of the said note *only* in the event of the payee faithfully and properly performing its contract with" him.

It thus appears by the agreement of the parties that the obligation into which Mark P. Wells entered when he made and delivered his note to the Contracting Company was, as between them, payable only in the event that the payee should faithfully and properly perform the contract with respect to which the defendant Surety Company's obligation related. The note, therefore, was not an absolute promise to pay in any event, such as would have existed were the transaction purely a loan. The obligation was for payment in a particular event, which was the faithful performance by the Contracting Company of its contract  The transaction, therefore, to this extent, was tied up with the contract.

The understanding that the maker of the note was to "protect" himself "out of the proceeds of the vouchers coming to E. E. Wells," being moneys coming first into his hands, and out of the same "to hold back $4,000," the amount of the note, does not suggest that Mark P. Wells looked to the future payments due the Contracting Company as "security" for the note which he made and delivered, but as the one certain and stipulated means of payment of the note. This apparently was the one circumstance which induced Mark P. Wells to make and deliver his note, for in his testimony he repeatedly refers to the understanding that when the payments to the Contracting Company became due he was to protect himself out of them. The effect of the note transaction was to anticipate payments as completely as though Mark P. Wells had paid the Contracting Company $4,000 in money, with the understanding that, when payments became due the Contracting Company, he was to hold back an amount equal to the sum advanced. The effect of the transaction upon the Contracting Company was to reduce its incentive to continue work until the payments regularly became due,

and the effect upon the surety of the Contracting Company was to deprive it of the safeguard which the presence of such an incentive affords.

The subcontract between Mark P. Wells and the Contracting Company was made on February 24, 1912. The note transaction occurred on March 22d following. Having acquired $4,000 by this means before any payments were due under the contract, and having performed work under the contract for which it thereafter received but $875 out of a contract price of $11,847, the Contracting Company quit work on May 4th, leaving the principal contractor to complete its work and the defendant Surety Company to pay for it. May it not be said that, when the subcontractor became possessed of $4,000 in advance of work done and payments due, he lost an incentive to continue, and the Surety Company was deprived of the protection which such incentive normally assures?

The case of Museum of Fine Arts v. American Bonding Co., 211 Mass. 127, 129, 97 N. E. 633, 635, is the principal one of a line of cases relied upon by the plaintiff as authority for his contention that the transaction in question was not an anticipated payment, but was a loan of credit secured by the borrower's rights in the contract. The case cited is readily distinguished from the case at bar, and by express language it distinguishes itself from Fidelity & Deposit Co. v. Agnew, 152 Fed. 955, 82 C. C. A. 103. The action was upon a contract of indemnity similar to the one under consideration. The owner of the building under construction loaned the contractor $5,000, and received from him his note for that amount, accompanied with a written agreement that the owner might apply to the payment of the note any sum of money that should thereafter become payable to him under the contract. The court found that the transaction did not amount to an anticipated payment because:

"The note was not made payable out of future installments to become due to Stannard [the contractor]; his agreement went no further than to authorize the application of such installments 'as security' for the note. There is no finding that either party intended or expected that the note *should be paid out of such future installments to come due to Stannard.* Much less is there anything to indicate an agreement or understanding that the plaintiff should look *only* to his future earnings for the payment of the note. It was negotiable in form, and, as we have seen, was payable absolutely, *and not upon any contingency* or *out of any particular fund.* If the plaintiff had chosen to do so, it could have put the note in suit the next day after it was taken, and Stannard would not have been allowed to set up in defense any agreement or understanding that it was to be paid only out of the fund designated as security. Torpey v. Tebo, 184 Mass. 307 [68 N. E. 223]; Wooley v. Cobb, 165 Mass. 503 [43 N. E. 497]. This was a private loan, like the ones discussed in Bateman Brothers v. Mapel, 145 Cal. 241 [78 Pac. 734], and St. John's College v. Ætna Indemnity Co., 201 N. Y. 335 [94 N. E. 994]. *It was not tied to Stannard's future rights under the contract,* as was the case with the note dealt with in Fidelity & Deposit Co. v. Agnew, 152 Fed. 955 [82 C. C. A. 103], and the reasoning of that case is not applicable."

In the case cited the note was given *by* the contractor as a borrower, *to* the owner, who made the loan, and from whom payments to the contractor, though not then due, would some day be due. The payee then held both the note and the security. Here the situation was re-

versed. The note was given *by* the principal contractor *to* the subcontractor; that is, by the man who some day would owe money to the man to whom the note was given. In the Museum Case there was an agreement that the future payments, when due under the contract, should be held by the *payee* "as security" for the note. There was no understanding that the note should be paid out of such future installments when due. Much less was there anything to indicate an agreement that the Museum should look *only* to the contractor's future earnings for payment of the note. In the case under consideration there was no agreement that future payments should be held by the principal contractor as "security" for the note, but there was an agreement that the principal contractor should look to the subcontractor's future earnings for the payment of the note, and·that the note was to be paid out of those particular earnings, in order to do which the principal contractor was authorized to "hold back" from the subcontractor an amount equal to the face of the note when such an amount became due it under the contract. By this agreement we believe that the payment of the note became so tied up with the payments provided by the contract that the transaction amounted to a departure from the contract upon which the undertaking of the surety was based.

The defendant relies upon the case of Fidelity & Deposit Co. v. Agnew, 152 Fed. 955, 82 C. C. A. 103, followed by Justice v. Empire State Surety Co. (D. C.) 209 Fed. 105, decided by this court, as announcing the law which governs this case. The facts of the case of Fidelity & Deposit Co. v. Agnew are somewhat similar to those of this case. The subcontractor, being short of funds, went to the contractor at a time when he had done but little on his contract, asking for an advance payment. Not being in funds, the contractor indorsed the note of the subcontractor, which was discounted; the proceeds being credited to the contractor and by him turned over to the subcontractor. Before the note fell due, the contractor owed the subcontractor more than the amount of the note. In making payment to the subcontractor he held back enough to meet the note, and deposited the same with the bank. This transaction was repeated several times, notes being given prior to payments due and being paid out of the proceeds of payments when due, until eventually the last note was paid. The court found, as a matter of law, that the transactions were anticipated payments, and released the surety of the subcontractor. In the opinion, the court said:

"The learned trial judge was of the opinion that these note transactions were merely accommodation loans having no other significance; Mr. Van Houten simply lending the security of his name by indorsing the notes of the marble company and the parties who succeeded it, which with the several renewals and extensions the bank discounted for them. But the case is not so simple; nor is the transaction able to be separated from the existing agreement between the parties with regard to the delivery of material. As already observed, the money obtained was obtained in direct response to an application by the marble company for an advance on account of the agreement and the delivery of material to be made under it, and by the arrangement which was made for its repayment it was expressly tied up to this. No doubt as to the bank it was a loan; but as to the others it was essentially an advance of money upon the agreement, to be repaid by delivery of the material there contracted for. * * * The point is that, instead of being

paid as marble and granite were delivered, as provided in the agreement, the marble company had put in its hands by the transaction a large sum of money in advance and anticipation of this. Thereafter it was not a question of payment according to deliveries, where the agreement puts it, but a repayment by deliveries outside of it. This deprived the surety of the protection and the incentive of restricted payments, and was just as prejudicial as if the advance were less disguised."

The principles of law adopted and applied by this court in the case of Fidelity & Deposit Co. v. Agnew we believe apply with equal force to the case under consideration, and control and direct our judgment.

The judgment below is therefore affirmed.