## HARVEY *v*. GEORGE.

1. PRINCIPAL AND SURETY—BOND—DISCHARGE OF SURETY—INJURY TO SURETY.

A surety on a building contractor's bond is not released from liability because the owner did not withhold 10 per cent. until final payment, as provided in the contract, where the money was used to liquidate demands for which. if unliquidated, the owner would be liable.

2. SAME—QUESTION FOR JURY—VERDICT NON OBSTANTE VEREDICTO.

In an action by the administratrix of the owner against a building contractor and his surety on the bond, where, under the testimony, it was a question for the jury as to whether any payments were made by the owner other than for materials and labor which the contract obligated him to pay, the court below was in error in setting aside the verdict of the jury in favor of plaintiff and directing a verdict in favor of the surety because the owner had not withheld the 10 per cent. provided for in the contract.

Error to Wayne; Sharpe (Nelson), J., presiding. Submitted October 24, 1919. (Docket No. 11.) Decided December 22, 1919. ·Rehearing. denied April 10, 1920.

Assumpsit by Alice M. Harvey, administratrix of the estate of William M. Harvey, deceased, against Henry F. George, principal, and the Fidelity & Deposit Company of Maryland, surety, on a bond. · Judgment for plaintiff against defendant George, and for defendant surety *non obstante veredicto*. Plaintiff brings error. Reversed as to defendant surety and judgment entered on the verdict.

*Wilkinson, Routier & Hinkley,* for appellant.

*Warren, Cady, Ladd & Hill* (*Horace W. Bigelow,* of counsel), for defendant surety.

BIRD, C. J. Defendant George, a building contractor,

entered into a written contract on January 20, 1915, with Dr. Harvey, plaintiff's intestate, to construct a residence for him in the village of Grosse Point, for the sum of $11,832.22. In order to secure the faithful performance of the contract the defendant surety company joined with George in a bond in the sum of $6,000, running to Dr. Harvey. When the residence was finally finished Dr. Harvey found he had paid out on account thereof $3,303 more than the contract price. On account of the disinclination of the principal and surety to make good their undertaking this suit was begun.

The surety company interposed several special defenses, namely: The failure of Dr. Harvey to observe the conditions contained in the bond and contract. At the conclusion of the evidence motions were made by both parties for a directed verdict, but these were overruled, the court being of the opinion that the jury should pass upon the question whether the conditions had been observed by Dr. Harvey, and if not, whether they had resulted prejudicially to the surety company. The questions were accordingly submitted to the jury and they returned a verdict for the plaintiff in the sum of $2,000.

Subsequently, upon motion of the surety company, the court directed a judgment for the surety company, notwithstanding the verdict of the jury, on the sole ground that the failure of Dr. Harvey to retain 10 per cent. of the contract price until the work was finished was, as a matter of law, prejudicial to the surety company, citing in support thereof the cases of *Prairie State Bank* v. *United States*, 164 U. S. 227 (17 Sup. Ct. Rep. 142); *Fidelity & Deposit Co.* v. *Agnew*, 152 Fed. 955 (82 C. C. A. 103); *Justice* v. *Surety Co.*, 218 Fed. 802 (134 C. C. A. 490); *Wells* v. *Surety Co.*, 222 Fed. 8 (137 C. C. A. 546); *People* v. *Banhagel*, 151 Mich. 43.

The stipulations of the contract concerning payment are as follows:

"Article 3. The owner agrees to pay the contractor in current funds for the performance of the contract, eleven thousand eight hundred and thirty-two dollars and twenty-two cents ($11,832.22), subject to additions and deductions as provided in the general conditions of the contract.

"Article 4. The owner agrees to make payments on account of this contract on the certificate of the architect, as follows:

"Less ten (10%) per cent. to be withheld until final payments shall be made on or about the first of each month. Before any payment is due, the contractor shall file with the said architects a correct schedule of the value of all materials actually built into the building and of all labor performed between payments and shall also file waivers of liens or sworn statements of all liabilities under this contract.

"In no case, however. shall the contractor be entitled to a payment which, in the judgment of the architect, will leave the balance withheld insufficient to complete the work.

"Article 5. * * * It is further agreed between the parties hereto that the said owner shall, between the first and tenth of every month, pay all bills for materials furnished on the premises for masonry, cut stone, iron and carpentry under this contract, said bills being approved by said contractor. Also the said owner shall pay to the said contractor or to his subcontractors for materials and labor in the amounts due for payrolls as the work progresses and shall pay the sum of forty ($40.00) dollars per week to the contractor, beginning February seventh (7th), 1915, and to terminate May fifteenth (15th), 1915. Balance of money due the said contractor as per schedule, furnished before first payment is made and filed with architect, with exception of percentage withheld, to be paid as follows:

"On the mason, cut stone and iron work, when building is cleaned down and accepted by said owner and architects. On the carpenter work when interior woodwork is finished and accepted by said owner and

architects.    Percentage to be ˌwithheld as otherwise provided in this contract."

The record discloses that Dr. Harvey paid to the material men and to George for payrolls and $40 per week for himself, as provided in the contract, the sum of $16,173.35.    Adding to this sum certain items for grading, and deducting the contract price of $11,832.-22, leaves an overpaid balance of $4,638.96.    Reducing this excess payment by the cost of "extras" leaves a net overpayment of $3,303.    The contractor testified that Dr. Harvey kept records of all moneys paid and to whom it was paid, and that "there was never any 10 per cent. withheld."    That Dr. Harvey did not withhold the 10 per cent. in making payments must be conceded, but plaintiff's counsel say the reason for the non-observance of the stipulation was due to the fact that the Doctor was under contract obligation to pay for labor and materials, and that when he did so the surety company was in no wise prejudiced; citing *Doyle* v. *Faust*, 187 Mich. 108; *People* v. *Traves*, 188 Mich. 415.

1. Counsel contend that the case of *Doyle* v. *Faust*, *supra*, laid down the rule that "where money is used to liquidate demands, for which, if unliquidated, the plaintiff would be liable, does not release the bonding company even though the 10 per cent. was not withheld."    If counsel are right in their interpretation of this opinion, and we think they are, a question of fact was raised under the proofs whether any payments were made by Dr. Harvey other than for materials and labor.    The contract obligated him to pay these items and also the $40 per week to the contractor.    Presumably the latter was for services.    The testimony shows that Dr. Harvey paid to material men and to George for payrolls, the sum of $16,173.35.    There is no testimony to show that he paid anything to the contractor as profits, and we discover no claim

of counsel that there was such a showing. George did not testify that anything was paid him on account of profits. The jury had the canceled checks, bills and receipts for moneys disbursed. They had the testimony of the contractor and others who were engaged upon the work. From all this testimony the jury could determine approximately what the actual cost of construction was. By comparing this cost with the sum actually paid by Dr. Harvey it could be ascertained with reasonable certainty whether anything was paid to the contractor as profits. A survey of the whole account is rather persuasive that there were no profits in the job for the contractor, and that his prospective profits were absorbed by the cost of material and the high price of labor. The testimony, at least, is open to that inference. The question was one for the jury and we are of the opinion that the first impression of the trial court was the right one.

In this view of the case it becomes unnecessary to determine whether a presumption of injury to the surety would arise upon mere proof that the stipulation had been violated by the owner.

The judgment for the defendant surety company must be vacated and a judgment entered in the trial court for plaintiff on the verdict of the jury. The plaintiff will recover his costs in both courts.

MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred. SHARPE, J., did not sit.