### GLOBE INDEMNITY CO. v. UNITY RYS. CO.

(Circuit Court of Appeals, Third Circuit. May 2, 1921.)

No. 2611.

1. **Principal and surety ⚖⇒117—Motives or results do not justify payments before contract time.**

   The surety on a bond securing a contract for the construction of a railroad roadbed has an equity in reserved percentages of the contract price, and a right to expect and demand that no payments will be made prior to the time specified in the contract, and good motives and beneficial results do not justify payments in violation of the contract.

2. **Principal and surety ⚖⇒55—Surety company's vice president held authorized to consent to payments before agreed time of payment.**

   Where a company, contracting to construct a railroad roadbed, had financial troubles from the beginning of the work, and the corporate surety's vice president and representatives of the railway company had numerous conferences and conversations among themselves and with representatives of the construction company, for the purpose of enabling it to complete the contract, at all of which it was assumed that the vice president represented the surety company, without any intimation by him that he had no authority to do so, and, without referring the question to the home office, he suggested the advisability of canceling the contract, and stated that his company did not want to take it over, he had authority to consent to payments to the contractor before the time specified in the contract.

3. **Principal and surety ⚖⇒162(3)—Instruction submitting question whether payments to principal were with surety's knowledge and acquiescence not erroneous.**

   Where the surety on a bond given to secure a contract for the construction of a railroad roadbed co-operated in all that was done to encourage the contractor to solve its financial troubles and keep on the job, and when it was apparent that the contract would not be completed told the railway company to cancel the contract and send its bill to his

company, an instruction submitting the question whether payments to the contractor before the contract time for payment was with his "knowledge and acquiescence," instead of "consent," was not erroneous.

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by the Unity Railways Company against the Globe Indemnity Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Gifford K. Wright and Alter, Wright & Barron, all of Pittsburgh, Pa., for plaintiff in error.

Boyer, Jones & Morton, Edwin W. Smith, and Reed, Smith, Shaw & Beal, all of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. On May 8, 1916, the Read Construction Company entered into a written contract with the Unity Railways Company to construct a certain line of roadbed for that company. The work was to commence within ten days, and to be completed within 4 calendar months from the date of the contract. The Railways Company agreed to pay the Construction Company at specified rates on or about the 15th day of each month for all work done and materials furnished and in place up to and including the last day of the preceding month, which the company's chief engineer certified to be in accordance with the contract, less 15 per centum of such amount, to be withheld by the company until the completion and acceptance of the work. The contractor gave a bond of $20,000 for the faithful performance of the contract, on which the Globe Indemnity Company became surety. The Construction Company began to build the roadbed, but failed to do the work in accordance with the terms of the contract, in that it did not furnish the required labor, materials, and equipment, and did not complete the contract within the time fixed, September 8, 1916.

Consequently, on October 5, 1916, the chief engineer of the Railways Company, in accordance with the sixth paragraph of the contract and with the knowledge and approval of Edward G. Roberts, resident vice president of the Indemnity Company, declared the contract violated and forfeited, and the contractor in default and without further rights under the contract. Thereupon the Railway Company took charge of the work of constructing the roadbed and completed it, but at a cost of $82,857.80 in excess of the contract price. This suit was brought by the Railways Company to recover $20,000, the amount of the bond, from the Indemnity Company, for the failure of the Construction Company to perform the contract in accordance with its terms. The jury returned a verdict for the Railways Company for the amount of the bond, with interest and costs.

The Indemnity Company seeks to reverse the judgment on the ground that two payments made by the Railways Company to the Construction Company were in violation of the terms of the contract, and so released the surety from its obligation on the bond. One of these

payments, made on August 3, 1916, was for $5,000, and the other, made on September 30, 1916, was for $9,000. Under the terms of the contract neither payment should have been made until the 15th day of the month following and then only upon the certification of the chief engineer of the Railways Company. The surety, however, did not lose anything by these payments. It cost the Railways Company $82,857.80 above the contract price to complete the contract. If neither payment had been made, and the contract had not been forfeited before it was, the most favorable assumption for the surety, the cost of completion would have been $14,000 less, or $67,857.80. The surety had the option of completing the contract or paying the penalty of the bond. If those payments had reduced the cost of completing the contract below $20,000, they might have injuriously affected the surety; but, as they did not, the amount of the liability was not changed.

[1] A surety, however, is not to be made liable beyond the express terms of its engagements. It has the right to prescribe the terms and conditions on which it will assume responsibility, and neither of the principals can change those terms without its consent. Good motives and beneficial results do not justify payments in violation of the contract, for the surety itself has the right to judge what is prejudicial or beneficial to it, and no arrangement, whatever its character, different from that contained in the original contract or undertaking, can be forced upon it. In a contract for building operations or the construction of a roadbed, such as was embraced in the contract under consideration, the surety on a contractor's bond has an equity in the reserved percentages, and has the right to expect and demand that no payments will be made contrary to the terms of the contract. Payments out of the reserved percentages diminish the security of the surety by decreasing the fund to which it has a right to look. Payments before they are due take away the incentive of the contractor to continue at work, and may become very harmful to the surety. Prairie State Bank v. U. S., 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412; Fidelity & Deposit Co. v. Agnew, 152 Fed. 955, 82 C. C. A. 103; Justice v. Empire State Surety Co., 218 Fed. 802, 134 C. C. A. 490; Wells v. National Co., 222 Fed. 8, 137 C. C. A. 546.

While admitting the truth of this general principle of law, the Railways Company says it is inapplicable because the resident vice president of the Indemnity Company, in effect, consented to the payments. In reply, the Indemnity Company contends that the resident vice president did not have authority to consent, and as a matter of fact did not consent.

[2] The learned trial judge did not expressly submit the question of his authority to the jury, but concluded it as a matter of law from the execution of the contract by him, and from his acts and conduct in conjunction with the Railways Company and the Construction Company with reference to the performance of the contract. Was this conclusion erroneous?

The Construction Company had financial troubles from the very beginning of the work. It soon became evident that the company would

have serious difficulty in completing the contract. Both the Indemnity Company and the Railways Company would probably suffer loss unless it was completed. Mr. Roberts and the representatives of the Railways Company realized this, and so they held numerous conferences and had many conversations among themselves and with the representatives of the Construction Company for the purpose of enabling it to complete the contract. Prices were going up, and both companies were anxious that the Construction Company should "keep on the job" and finish the work. They were all working together for one common end and for mutual benefit.

All through these conferences and conversations it is evident that Mr. Roberts was working, not for himself, but for the Indemnity Company, which he represented. In everything that was done it was apparently assumed, or generally understood, without a hint to the contrary, that he represented the Indemnity Company and had authority to act for it. It was testified that he knew about the payments, and the jury found as a fact that he did. At none of the numerous conferences and conversations with the representatives of the Railways Company or Construction Company did he ever intimate that he was without authority to represent the Indemnity Company. If he had no authority to act for his company, his presence and participation in the conversations and conferences to further the performance of the contract are inexplicable. That he had authority to represent his company was his sole ground for taking any part in the conversations and conferences.

It was with his knowledge and consent that the Construction Company on July 8, 1916, sold to the Railways Company, for the purpose of getting money to continue the work, its plant and equipment, which were, on the same day, leased by the Railways Company to the Construction Company. Just before declaring the contract forfeited, Mr. Boyer, president of the Railways Company, discussed the advisability of so doing with Mr. Roberts, who stated that it looked to him as if the best thing to do was "to cut it off" and cancel the contract, and upon being asked if the Indemnity Company, which he represented, wanted to take over and complete the contract, he said that it did not. He did not refer the question to the home office, but acted for the company on the spot at once.

Under these circumstances, we feel that it was not error for the learned trial judge to conclude that Mr. Roberts had authority to represent his company in the common effort to have the Construction Company perform the contract.

[3] Even if Mr. Roberts had authority to consent to these payments, the question of his consent, says the Indemnity Company, was not submitted to the jury. The jury was charged that, if the payments were made with his "knowledge and acquiescence," they should find a verdict for the Railways Company. The Indemnity Company complains because the trial judge did not use the word "consent," rather than "acquiescence." It is true, as a general proposition of law, that "consent" to a material change in a contract must be established, or the surety is released. The evidence, however, justified the conclusion that

Mr. Roberts not only acquiesced, stood by without a murmur when the circumstances required him to speak out, but that he actually co-operated in all that was done to encourage the Construction Company to solve its financial troubles and "keep on the job" until the contract was completed. And when the company was "going from bad to worse," and it was apparent that the contract would not be completed, he said: "Cut it off. Send us the bill." In view of the authority of Mr. Roberts to represent his company, the use of the word "acquiesce," under the facts of this case, we think, was sufficient.

The judgment is accordingly affirmed.