## SOUTHERN PAC. CO. v. GLOBE INDEMNITY CO.

Circuit Court of Appeals, Second Circuit. August, 8, 1927.

No. 334.

1. **Principal and surety** ☞77—Bond to secure advance payments to shipbuilder held to cover all, and not merely advances made before and at time bond was given.

Where a bond was given to secure advance payments to a shipbuilder, and subsequently a second similar bond was given, reciting that the obligee should be indemnified against all loss sustained by reason of having released moneys before they were due, *held* that the second bond covered all advances, and not merely those made at the time the bonds were executed.

2. **Assignments** ☞90—Assignee of installment of shipbuilding contract held to stand in shoes of assignor, who abandoned contract.

Where a shipbuilder abandoned a contract, and thereby lost all rights to payments of further installments, the assignee of one of the installments *held* to stand in the shoes of the builder.

**3. Principal and surety ⊂⊃115(1)—Money due shipbuilder when contract was abandoned held security against damages, release of which to builder's assignee discharged builder's surety pro tanto only.**

Money due a shipbuilder at time of abandonment of contract *held* security against damages for breach of the contract, the release of which security to an assignee of the builder discharged the surety on the builder's bond pro tanto only.

**4. Principal and surety ⊂⊃115(1)—Where obligee's release of money due shipbuilder abandoning contract does not actually injure builder's surety, surety's obligation is not affected.**

Where no injury in fact results to a surety on a shipbuilder's bond, because after the shipbuilder abandoned the contract the obligee released certain money then due the builder, the surety's obligation is not affected.

**5. Damages ⊂⊃85—Liquidated damage clause in shipbuilding contract held to apply as against surety, notwithstanding contract was abandoned by builder.**

Liquidated damage clause for delay in delivering ship *held* to apply as against surety on builder's bond, notwithstanding the shipbuilder abandoned the contract, especially since the repudiation was after time for completion of the ship was past, so that some part of the damages had already accrued.

**6. Damages ⊂⊃85—Contractor cannot be liable under liquidated damage clause for delays caused solely by owner in completing work after contractor abandons contract.**

Where a contractor abandons work under the contract, he cannot be *held* liable under a liquidated damage clause for delays caused solely by the owner in completing the work.

In Error to the District Court of the United States for the Southern District of New York.

Suit by the Southern Pacific Company against the Globe Indemnity Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

The suit is for $100,000, the penalty of a bond made by Downey Shipbuilding Corporation, as principal, and defendant, as surety. A jury was waived and the case tried on an agreed statement of facts.

Downey Shipbuilding Corporation, hereinafter called the builder, contracted to build three steel, ocean-going, freight-carrying steamships for the plaintiff. The price of each ship was $1,433,333.33, and payment was to be made by plaintiff as the work progressed in 11 installments, each being due at a designated stage of construction. The ships were named El Estero, El Isleo, and El Lago. The contract declared time to be of the essence, fixed a date for the delivery of each ship, and provided for the payment of a stip-

ulated sum as liquidated damages for each working day during which its delivery should be delayed.

On November 26, 1920, the builder, being short of funds to meet pay rolls, asked plaintiff to pay the eleventh or "final trial trip" installment on El Estero, although it was not yet due. Plaintiff refused to do so unless secured, and thereupon the builder obtained and delivered defendant's bond. November 27, 1920, plaintiff made the requested final payment of $71,666.67, being 5 per cent. of the purchase price of El Estero.

On December 23, 1920, the builder requested plaintiff to advance the final trial trip payment on El Isleo, before it was due. Plaintiff again demanded security, and the builder obtained and delivered the bond in suit. Plaintiff then made the requested final payment of $71,666.67 on El Isleo.

The second bond is stated to be a re-execution of the first bond, and, although executed and delivered on December 23, 1920, it recites sealing and dating on November 26, 1920. The first bond was surrendered to the defendant for cancellation. The condition of the second bond reads as follows:

"Whereas, the above-bounden principal entered into a certain written contract with the above-named obligee, dated the twenty-second day of December, 1919, to build for the obligee in a good and workmanlike manner, and in substantial accordance with the plans and specifications thereto attached and made a part hereof, three (3) steel ocean-going freight-carrying steamships, *and to deliver same free from all liens, claims, and incumbrance,* which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein; and

"Whereas, article 9 of said contract provides for progress payments and that the last payment of 5 per cent. will be made after the final trial trip has been run by each ship as provided for in the specifications; and

"Whereas, the above-bounden principal is desirous of releasing a part of moneys so retained, and in consequence thereof is required to furnish this undertaking:

"Now, therefore, the condition of the above obligation is such that, if the above-bounden principal shall indemnify and save harmless the said obligee against any and all loss sustained by reason of having released a portion of the moneys so withheld before the final trip has been run by each ship as provided for in the specifications, *including any loss on account of liens, claims, and incumbrance on any of said ships,* then this obliga-

tion shall be void; otherwise, to be and remain in full force and effect."

The words in italics were not in the condition of the first bond; otherwise, the two bonds were identical.

On December 31, 1920, the builder requested and obtained from plaintiff, without notice to defendant, $50,000 on account of the ninth installment on El Lago in advance of the time when due.

On January 4, 1921, the builder notified plaintiff that it abandoned work under the contract. On that date El Isleo and El Lago were still uncompleted.

On January 5, 1921, plaintiff, without notice to defendant, paid to the United States Mortgage & Trust Company the tenth or "ready for delivery" installment on El Isleo, this installment having been previously assigned to said trust company by the builder.

On January 6, 1921, the United States District Court for Delaware appointed a receiver for the builder. Ancillary receivers were next day appointed in New York. The receivers elected not to adopt the contract with plaintiff.

Upon the builder's abandonment, plaintiff proceeded to complete El Isleo and El Lago. Plaintiff also paid certain sums, which the builder should have paid under the contract, on account of El Estero.

Plaintiff's statement of account shows that its cost of completing construction, discharging liens, making good trial trip defects, etc., in respect to the three ships, was $70,482.31 more than the contract price. Plaintiff also claimed liquidated damages of $137,299 for delays, making its total claim of loss $207,781.31. Delays on the three ships were figured as follows:

| Vessel. | Delivery Due. | Actual Delivery. |
| --- | --- | --- |
| El Estero. | November 15, 1920. | November 24, 1920. |
| El Isleo. | December 20, 1920. | January 19, 1921. |
| El Lago. | December 4, 1920. | March 3, 1921. |

Burlingham, Veeder, Masten & Fearey, of New York City (Van Vechten Veeder and Eugene Underwood, Jr., both of New York City, of counsel), for plaintiff in error.

Daniel Combs, of New York City, for defendant in error.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). [1] Among several defenses raised by the surety at the trial was one involving the meaning of the bond. It was urged that the bond was intended to cover only the anticipation of the final installment payable on El Estero and El Isleo. The language of the condition of the bond is, however, too broad to admit of this construction. It recites the contract for the building of three ships; that payments are to be made as the work progresses, and the last payment after the final trial trip "by each ship"; that the principal desires to release a part of the moneys so retained; and the condition is to save harmless the obligee against "all loss sustained by reason of having released a portion of the moneys so withheld before the final trip has been run by each ship." We agree with the trial court's interpretation that the obligation of the bond protects the plaintiff in advancing any "progress payment" on any of the three ships.

The defendant has cited cases which hold that payments prior to the time specified in the contract discharge completely a surety on a contractor's bond for faithful performance. Justice v. Empire State Surety Co. (D. C.) 209 F. 105 (E. D. Pa.); Wells v. National Surety Co., 222 F. 8 (C. C. A. 3); Globe Indemnity Co. v. Unity Rys. Co., 272 F. 607 (C. C. A. 3). These cases are not deemed applicable to the case at bar. This bond was executed for the very purpose of securing advance payments. Moreover, the payment of $71,666.67 to the United States Mortgage & Trust Company was made after the builder's abandonment.

[2-4] The ground upon which the learned judge dismissed the complaint was that this payment operated as a complete release of the surety's obligation. His reasons for holding this a complete release, rather than a release pro tanto, are not stated. The trust company, as assignee of the tenth installment on El Isleo, stood in the shoes of its assignor, the builder, and it is true that the plaintiff would not have been privileged to make any payment to the builder after its abandonment of the contract. Any money due the builder, which the plaintiff then held, must be deemed security which the plaintiff had against its damages for breach of the contract. A release of such security would be an injury to the surety, but such injury would be measured by precisely the amount of the payment. Regarding the payment as a release of collateral security, it is perfectly well settled that the surety is discharged thereby only pro tanto. Taylor v. Continental Supply Co., 16 F.(2d) 578 (C. C. A. 8); Boston Penny Savings Bank v. Bradford, 181 Mass. 199, 63 N. E. 427; Beaver Trust Co. v. Mor-

gan, 259 Pa. 567, 103 A. 367; St. John's College v. Ætna Indemnity Co., 201 N. Y. 335, 94 N. E. 994; 2 Williston, Contracts, § 1232. If no injury in fact results to the surety, his obligation is in no way affected. Wood v. Brown, 104 F. 203 (C. C. A. 8); Pickens County v. National Surety Co., 13 F.(2d) 758 (C. C. A. 4). It is apparent, therefore, that the judgment must be reversed, unless the plaintiff's claim·under the bond is less than the sum wrongfully paid to the trust company.

The plaintiff claims its loss under the contract is $207,781.31. Of this sum, $137,299 is on account of liquidated damages for delay in completion of the vessels, and $70,482.31 represents plaintiff's expenditures in excess of the contract price of the three vessels. Giving defendant credit for the $71,666.67 paid to the trust company would leave, instead of a loss, a credit to plaintiff of $1,184.-36. These figures agree with the defendant's, and leave any recovery dependent altogether on the claim for liquidated damages.

[5] It is·urged that a liquidated damage clause does not apply when work under the contract is abandoned by the contractor. Murphy v. U. S. Fidelity & Guaranty Co., 100 App. Div. 93, 91 N. Y. S. 582, affirmed 184 N. Y. 543, 76 N. E. 1101, and Village of Canton v. Globe Indemnity Co., 201 App. Div. 820, 195 N. Y. S. 445, are cited as authorities to this effect, and a similar statement may be found in Williston, Contracts, § 785. A close examination of the·cases, however, does not in our opinion establish such a rule, and we can see no justification for it, at least when the contractor abandons after the time for completion has passed. In such a case some part of the liquidated damages has accrued before the repudiation. No intelligible reason has been suggested why the owner should lose his right to them because of subsequent repudiation.

The Village of Canton Case seems to hold that he does lose it, but it purports to follow the Murphy Case and others which are easily distinguishable. In the Murphy Case the plaintiff sued for the damages actually sustained by him by reason of abandonment of the contract. The defendant tried to limit him to the stipulated per diem sum. The court allowed plaintiff to recover his actual damages, saying that the per diem allowance was not intended to be paid in lieu of per-

formance, but upon performance after the time fixed in the agreement. Bacigalupi v. Phœnix Bldg. & Const. Co., 14 Cal. App. 632, 112 P. 892, also cited by Professor Williston, is to the same effect. In these cases the plaintiff made no claim to collect liquidated damages for delay, as well as the increased cost of completing the abandoned work. They are not, therefore, authorities for the alleged rule that he cannot do so. The other cases relied upon in the Village of Canton Case are in most instances decided upon a construction of other provisions of the contract. In none of them is the situation the same as in the case at bar.

[6] On the other hand, there are a number of decisions which permit the owner to recover, not only the increased cost of completing the abandoned contract, but also liquidated damages for delay caused by the contractor's breach. School District v. De Lano, 96 Kan. 499, 152 P. 668; Watson v. De Witt County, 19 Tex. Civ. App. 150, 46 S. W. 1061; Comey v. United Surety Co., 160 App. Div. 698, 145 N. Y. S. 674, aff'd, 217 N. Y. 268, 111 N. E. 832, Ann. Cas. 1917E, 424; McKegney v. Ill. Surety Co., 180 App. Div. 507, 167 N. Y. S. 843; Bankers' Surety Co. v. Elkhorn River Drainage Dist., 214 F. 342 (C. C. A. 8). These cases do not limit the liquidated damages to delays occurring prior to the contractor's abandonment. They do require that the delay be caused by the contractor, but his default may be operative to delay completion by the owner. The contractor cannot, of course, be held for the delays caused solely by the owner in completing the work. Gilette v. Young, 45 Colo. 562, 101 P. 766. We think the owner must show the time that the contractor would have taken to complete the work. Ordinarily this will be no longer than the shortest time in which it could be completed, but that is a question of fact for him to answer. If he can show that, we see no reason why the contractor's repudiation should stop the running of the liquidated damage clause.

How much the plaintiff's liquidated damages will be this record does not show, but it is apparent that he will be entitled to some recovery on the bond, after giving the defendant credit for the wrongful payment to the trust company.

The judgment is therefore reversed, and the cause remanded for further proceedings.